### GRIFFIN v. HUNT.

### No. 34918.

Supreme Court of Oklahoma.

March 16, 1954.

Rehearing Denied April 6, 1954.

Application for Leave to File Second Petition for Rehearing Denied April 20, 1954.

Wise & Ivester, Sayre, for plaintiff in error.

Meacham, Meacham, Meacham & Meacham, Clinton, for defendant in error.

PER CURIAM.

Reference will be hereinafter had to the parties as they appeared in the court below.

Plaintiff, Frank W. Hunt, a veterinarian, instituted this suit to enjoin the defendant, Wm. B. Griffin, another veterinarian, from violating his written contract not to engage in the practice of veterinary medicine in Beckham County, Oklahoma, for a period of five years after September 1, 1949. Upon full hearing, the trial court granted a permanent injunction and the defendant appealed. The facts supported by the evidence and as found by the trial court, are substantially these:

For many years prior to July, 1949, Dr. Slankard practiced his profession as a

veterinarian at Elk City in Beckham County, using for that purpose a sizable tract of land on which he had his hospital building, kennels, a shed, stud barns and fences. He died about 1945, and his widow Mrs. Slankard, and their daughter inherited this property and these facilities. Soon thereafter, they made an arrangement with the defendant, Griffin, under which he occupied and operated the property in carrying on his profession as a veterinarian there at Elk City. A short time prior to July, 1949, defendant notified Mrs. Slankard that he intended to quit his practice there and move away. She and her daughter accordingly decided to sell their property on which the hospital building and other improvements were located and the practice connected therewith. The plaintiff, Hunt, had just graduated as a veterinarian, and contacted Mrs. Slankard during the month of June, 1949. She offered to sell all of these facilities owned by herself and her daughter, together with the instruments connected with the veterinary practice, to him for $10,500. He advised her that he would not be interested in acquiring these facilities unless the defendant, Dr. Griffin, who was then operating the hospital and carrying on the practice there, would agree not to practice within the county for a reasonable period of time. He accordingly contacted the defendant, Griffin, who agreed to so covenant. On the strength of this promise, plaintiff purchased the hospital and other facilities from Mrs. Slankard and her daughter for $10,500. Included in this figure were various instruments and tools, but Mrs. Slankard informed the plaintiff that she wanted the defendant Griffin, to have such of those instruments and tools as he might select, and that she would pay the plaintiff for the ones taken by defendant Griffin. He did take a number of the instruments and tools and she in turn reimbursed the plaintiff for them. The defendant had at the hospital grounds a cattle chute, drugs and feed, and also some grain, for all of which he was paid by the plaintiff, $1,104.

Plaintiff testified that he would not have purchased the hospital and other facilities and supplies, except for the agreement on the part of the defendant to the effect that he would not engage in his practice there in Beckham County for the period in question, and that both Mrs. Slankard and the defendant Griffin so understood. The sale by Mrs. Slankard was consummated at the end of June, 1949, but the written covenant on the part of the defendant was not executed until ten days or two weeks later, but when actually signed was dated July 1, 1949, was witnessed by Mrs. Slankard and read as follows:

"In consideration of the sum of $1.00 and other good and valuable considerations, I hereby covenant, agree and promise to Frank W. Hunt, of Elk City, Oklahoma, that I will discontinue my veterinary practice in Beckham County, Oklahoma, on or about September 1st, 1949, and further covenant and agree and bind myself personally not to engage in or be directly or indirectly engaged or interested in the practice of veterinary medicine in Beckham County, Oklahoma, for or during the period of five years from and after September 1st, 1949.

"Wm. B. Griffin"

The defendant, Griffin, remained at the hospital with the new owner, Dr. Hunt, for a month for the very reason, as he himself testified, that he wanted to help Mrs. Slankard in every way to sell the hospital and also wanted to help Dr. Hunt in his efforts to take over the practice. We quote from Dr. Griffin's testimony:

"Q. After the contract was made, how come you to stay there for any period of time? A. I had some cases in the hospital that I could help Doctor get acquainted with, and also help him to get acquainted with the practice and clientele, and help him get started.

"Q. Did you do that at his request or Mrs. Slankard's? A. Mrs. Slankard asked me if I would help her sell the property and get another man located there. Of course, I felt it was only right that I should try to help someone take over this practice.

"Q. In other words, did Dr. Hunt ask you to stay there that period of

time, did you have any agreement how long you were to stay or anything of that kind? A. We agreed that I would stay until August 1st."

After staying and helping the plaintiff as he agreed to do, defendant left the county and engaged in his practice elsewhere. About six months later, he decided to return and practice in Beckham County. Before doing so, he attempted to buy back the property from the plaintiff, but without success. He then commenced practice there in the county, and this litigation ensued. He contended before the trial court and now contends that his written covenant not to practice in Beckham County, for a period of five years, was and is invalid under the laws of this state, as being without consideration and in restraint of trade. Griffin said in another part of his testimony that he had no part in the transaction whereby the plaintiff acquired the hospital and other facilities and that he received no consideration in the sale and was not involved in the negotiations. He further said that he signed the agreement "just as a matter of courtesy" to Dr. Hunt. He specifically denied that Dr. Hunt told him that he was not interested in acquiring the property and the practice unless he, Dr. Griffin, would sign the covenant not to engage in practice in the same county for a period of five years. This testimony on his part, of course, was contrary to the testimony of the plaintiff himself. The trial court saw the witnesses in person and heard their testimony, and chose to believe that the facts in this regard were as stated by the plaintiff, rather than as recited by the defendant. We accept the trial court's findings as being fully supported by the evidence.

This brings us to the vital question in this case as to whether the covenant, on the part of the defendant not to engage in his profession in Beckham County, for the period of five years, was valid under our statutes. Defendant asserts its invalidity. He says that there was no sale to the plaintiff of the good will of a business as required by our statutes. These are as follows:

"Title 15 O.S.A. § 217. Every contract by which any one is restrained from exercising a lawful profession, trade or business of any kind, otherwise than as provided by the next two sections, is to that extent void."

"Title 15 O.S.A. § 218. One who sells the good-will of a business may agree with the buyer to refrain from carrying on a similar business within a specified county, city or part thereof, so long as the buyer, or any person deriving title to the good-will from him carries on a like business therein."

The facts here bring this case within the ambit of these sections. Plaintiff did not simply buy buildings, equipment and instruments. Instead, he sought to and did buy a going business, along with its good will. The defendant, Dr. Griffin, was the one who was operating the business and had developed the good will. Plaintiff made it plain that he was not interested in acquiring the hospital and the facilities without having a binding covenant from the defendant that he would not engage in the practice in that county for a period of five years. The obvious purpose in requiring the giving of that covenant and the making of it by the defendant was to preserve for plaintiff the good will of the business, which he was acquiring. While it is true that nowhere in the covenant itself is there anything said about the defendant selling good will to the plaintiff, nevertheless, that was the plain purpose and effect of the covenant and of the agreement with Mrs. Slankard. Our previous decisions so reason and declare. Wall v. Chapman, 84 Okl. 114, 202 P. 303; Threlkeld v. Steward, 24 Okl. 403, 103 P. 630; Herrington v. Hackler, 181 Okl. 396, 74 P.2d 388; Key v. Perkins, 173 Okl. 99, 46 P.2d 530.

In Wall v. Chapman, supra, Chapman, a dentist at Sulphur, sold to Wall all of his tools, equipment and office furniture, and agreed that he would abstain from the practice of dentistry in the City of Sulphur for a period of five years. Thereafter, he violated his covenant by returning to practice in Sulphur. He contended that the contract was not enforceable because it

said nothing about his having sold "good will". We there held that Chapman violated his covenant, and that it was enforcible, saying:

"The obvious intent of a contract for the sale of all tools, furniture, and equipment of the office of a dentist to another dentist, coupled with an agreement by the seller not to enter into a like business in the same town for a period of five years, is to sell the good will of the business."

And in Herrington v. Hackler, supra, [181 Okl. 396, 74 P.2d 391] a doctor had sold a hospital to another doctor and had agreed not to engage in the practice of his profession in that same town for a period of five years. He violated this covenant on his part, contending that it was not valid under the statutes quoted above, as nothing was said in the contract about the sale of "good will". We sustained the validity of the contract and enjoined its violation, saying:

"The defendant contends that the foregoing statutes are inapplicable for the reason that the contract in the present case contains no provision for the sale of the goodwill of defendant's business, and that such sale was not contemplated by the parties. We cannot agree with this contention. The rule is stated in 12 R.C.L. p. 985, as follows: 'Where a contract for the sale and transfer of a business omits to mention the goodwill, the presumption is that it was the intenion of the parties that the goodwill should pass with the other assets. This necessarily results from the fact that the goodwill cannot exist except in connection with the business.' "

In the more recent case of Key v. Perkins, supra [173 Okl. 99, 46 P.2d 532], we applied the same reasoning where a stockholder in a corporation, engaged in the hardware business at Wewoka, sold the corporate hardware company and covenanted personally not to engage in the hardware business in that city as long as the purchaser continued in that business. Later he ignored his covenant and started business anew, contending that he did not have a sufficient vendible interest in the good will of the business of the corporation to sustain an agreement on his part not to personally engage in the business carried on by the corporation. But we held otherwise and enforced the covenant, saying:

"As we view it, the weight of authority and sound reasoning and logic support the contention that the owner of an appreciable interest in the stock and property and assets of a corporation has a proportionate interest in the good will of the business; and that on a sale thereof such owner is bound by a contemporaneous agreement, supported by an adequate consideration, not to engage in a similar business within the territorial and time limits provided by section 9493, supra, [now § 218, Title 15 O.S.A.] of our statute. In this case the acquisition by the purchasers of the interest of defendant in error in the good will of the corporation's business was one of the inducements of the purchase, and for which they paid a valuable consideration."

We accordingly affirm the findings and judgment of the trial court.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH, CORN, DAVISON, and BLACKBIRD, JJ., concur.

This court acknowledges the services of attorneys, Claude Monnet, Herman Merson and George Miller, Sr., who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the Court.

O'NEAL and WILLIAMS, JJ., dissent.