**Tommy TATUM, Plaintiff in Error,**

v.

**COLONIAL LIFE AND ACCIDENT INSURANCE COMPANY OF AMERICA, Defendant in Error.**

**No. 43405.**

Supreme Court of Oklahoma.

Feb. 17, 1970.

M. W. Cooper, Oklahoma City, for plaintiff in error.

Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, by V. P. Crowe and D. Kent Meyers, Oklahoma City, for defendant in error.

LAVENDER, Justice.

This is an appeal from an order of the district court enjoining the plaintiff in error, who was the defendant below, for a period of two years after the date on which a certain agreement between him and the plaintiff insurance company had been declared terminated by the company, from selling, or attempting to sell, any form of accident or health insurance to or on any of the plaintiff's insureds under group policies or franchise policyholders, and from inducing, or attempting to induce, any of the plaintiff's insureds under group policies or franchise policyholders to cancel, lapse, or fail to renew their policies with the plaintiff.

Such injunction was based upon the defendant's admitted violations of covenants by him (contained in an amendment to a written agreement between the plaintiff insurance company and the defendant in which the company appointed the defendant as its "Soliciting Agent for the purpose of canvassing for applications for policies for accident or health insurance on individuals, and groups of individuals") not to do any of the prohibited acts during the period of two years following the termination, for any reason, of the agency agreement.

The primary question presented is whether or not such contractual restriction upon the activities of the defendant is void under the provisions of 15 O.S.1961, § 217:

"Every contract by which any one is restrained from exercising a lawful profession, trade or business of any kind, otherwise than as provided in the next two sections, is to that extent void."

Clearly, neither the sale of the good will of a business nor the dissolution, or anticipated dissolution, of a partnership is involved in the contract in question herein, so this contractual provision does not fall within the exceptions provided for in "the next two sections" (15 O.S.1961, §§ 218 and 219), which provide, respectively, that: "One who sells the good-will of a business may agree with the buyer to refrain from carrying on a similar business within a specified county, city or part thereof, so long as the buyer, or any person deriving title to the good-will from him carries on a like business therein;" and that: "Partners may, upon or in anticipation of a dissolution of the partnership, agree that none of them will carry on a similar business within the same city or town where the partnership business has been transacted, or within a specified part thereof."

■ The defendant contends, correctly, that courts will not enforce, nor aid in the enforcement of, a contract made in violation of law, nor will they grant relief at the instance of a plaintiff who, in order to prevail, is compelled to rely solely upon an illegal contract [Crawford, County Treasurer et al. v. McConnell et al. (1935), 173 Okl. 520, 49 P.2d 551; Sigmon Furniture Manufacturing Company v. Massey (1943), 192 Okl. 436, 137 P.2d 793]. And, in this connection, the defendant cites 15 O.S. 1961, § 211, which provides that: "Those contracts are unlawful which are: 1. Contrary to an express provision of law; 2. Contrary to the policy of express law, though not expressly prohibited; or, 3. Otherwise contrary to good morals."

In support of his primary proposition that the contractual provision involved herein is void (and unlawful) under the provisions of 15 O.S.1961, § 217, supra, the defendant cites E. S. Miller Laboratories, Inc. v. Griffin (1948), 200 Okl. 398, 194 P.2d 877, 3 A.L.R.2d 519, and the 1904 South Dakota case of Prescott v. Bidwell, 18 S.D. 64, 99 N.W. 93, as being supportive of his proposition. It is unnecessary to discuss the cited South Dakota case, since that state had three statutes exactly like 15 O.S.1961, §§ 217, 218, and 219, the contractual provision involved in that case was, in effect, the same as the one involved in the Miller Laboratories case, and the court reached the same result that this court reached in the Miller Laboratories case.

In Miller Laboratories, Inc. v. Griffin, the defendant had terminated his contract of employment as a salesman, in a speci-

fied territory, for the plaintiff, a manufacturer and seller of pharmaceutical, chemical and biological products, and, admittedly, had gone to work, immediately, as a salesman, in the same territory, for another pharmaceutical company, in violation of a provision in his written employment contract that, in the event, he left such employment, he would not work in that territory for any other pharmaceutical company or distributor for a period of two years thereafter. In affirming the trial court in sustaining the defendant's general demurrer to the company's petition for an injunction against further violations of the covenant during the two-year period following termination of the defendant's employment contract, this court held that such contractual provision was void under the provisions of the statute that now appears as 15 O.S.1961, § 217, supra, and, therefore, was not enforceable.

However, we think that the contractual provision involved in the present case is distinguishable from the one involved in the Miller Laboratories case. Unlike the one involved in that case, the contractual provision in the present case does not, in any manner or to any extent whatsoever, restrain the defendant from exercising a lawful profession, trade, or business of any kind whatsoever, either in competition with the plaintiff or otherwise. It, in substance and effect, simply requires the defendant, for a period of two years after the termination of his appointment as a soliciting agent for the plaintiff insurance company, to maintain a "hands-off" policy with respect to those whom he knows are "insureds" under then-outstanding group policies, or franchise policies, of health and/or accident insurance issued by the plaintiff company. The contract requires him to refrain, during such two-year period, from inducing, or attempting to induce, any such known insureds of the plaintiff company to cancel, lapse, or fail to renew, their policies with the plaintiff company (whether or not he sells, or attempts to sell, them or any of them health or accident insurance written by another carrier).

Clearly, this contractual provision is not intended to preclude the defendant from selling, or attempting to sell, any other form of insurance to those insureds, or to preclude him from selling, or attempting to sell, any form of insurance (including health and/or accident insurance) to any one else. Just as clearly, it is not intended to protect the plaintiff company against fair competition in the insurance field involved, but is intended to protect the plaintiff company against unfair competition in that field, on the part of its former soliciting agents, particularly that which would result from the former agent's use of information concerning the company's group, and franchise, health and/or accident policies and those insured thereunder, furnished by the company to him as its soliciting agent, or acquired by him through his activities as such a soliciting agent.

The record herein discloses that the plaintiff company sometimes assigns policies sold by one soliciting agent to another one of its soliciting agents for "servicing," with the renewal commissions, as earned, being divided between the two agents involved. Such an assignment, of course, requires that information concerning the insured and the policy, including the renewal date therefor, be furnished by the company to the servicing agent, and this information is in addition to all information concerning policies sold by a soliciting agent, and those insured under such policies, acquired by him in connection with the sale of the policies.

As noted in the Miller Laboratories case, the State of California has three statutes exactly like 15 O.S.1961, §§ 217, 218, and 219, and the California courts had held that contractual provisions similar, in effect, to the one involved in the Miller Laboratories case are void under the statute like our Section 217. However, California cases involving contractual provisions similar, in effect, to the ones involved in our present case note the same distinction that we have noted herein, and hold that such contractual provisions do not restrain the defendant from exercising any profession,

trade, or business of any kind, and, therefore, do not come within the purview of the California statute like 15 O.S.1961, § 217. See: State Farm Mutual Automobile Insurance Company v. Dempster et al. (1959), 174 Cal.App.2d 418, 344 P.2d 821; Gordon v. Landau (1958), 49 Cal.2d 690, 321 P.2d 456; and Handyspot Company of Northern California v. Buegeleisen (1954), 128 Cal.App.2d 191, 274 P.2d 938.

The first two of those cited cases treat information such as that mentioned hereinabove as being in the nature of a "trade secret," and as being valuable property of the principal or employer involved. However, for the purpose of this opinion, we do not deem it necessary to put any kind of a name-tag on such information.

■ We hold that the contractual provisions involved in the injunction issued by the trial court in this case do not come within the purview of 15 O.S.1961, § 217 and are not unenforceable as being violative thereof.

■ The defendant also calls attention to Section 8 of Article 23 of the Constitution of the State of Oklahoma, which provides that:

"Any provision of a contract, express or implied, made by any person, by which any of the benefits of this Constitution is sought to be waived, shall be null and void."

He contends that, under that provision of our Constitution, the contractual provisions involved herein are null and void (and, therefore, unenforceable) because they week to waive benefits guaranteed to the defendant by Section 2 of Article 2 of the Constitution, which provides that:

"All persons have the inherent right to life, liberty, the pursuit of happiness, and the enjoyment of the gains of their own industry."

Since he makes no attempt to show how these contractual provisions seek to waive any particular benefit or right guaranteed by Section 2 of Article 2 of the Constitution, we can only assume that he has in mind that portion thereof which states that all persons have the inherent right to the "enjoyment of the gains of their own industry." The defendant cites no cases in support of this proposition, and—even assuming that this last-mentioned portion of said Section 2 has some application between private parties—we fail to perceive how the contractual provisions involved herein, voluntarily agreed to by this defendant, waived his inherent right, under Section 2 of Article 2 of the Oklahoma Constitution, to the enjoyment of the gains of *his own* industry. We hold that they do not do so.

■ Also, the defendant makes no attempt to show—and we fail to perceive—that the contractual provisions involved herein are either "contrary to the policy of express law, though not expressly prohibited," or "otherwise contrary to good morals," so that, under the provisions of 15 O. S.1961, § 211, supra, they would be "unlawful" (and, therefore, not enforceable). We hold that they are not.

■ In his only remaining proposition, the defendant argues that the plaintiff herein had not done equity with respect to the contract containing the provisions involved herein, and did not come into court with clean hands, and, therefore, is not entitled to the aid of a court of equity in enforcing the provisions of that contract which are involved herein. His argument on this point seems to be that the record discloses that he was hospitalized, and unable to perform any work as an insurance salesman, for a period of approximately four months; that, upon his recovery, he resumed his work as a salesman for the plaintiff company and continued in that work until the plaintiff breached his employment contract by refusing to pay him renewal commissions which were payable to him under that contract; and that, because of that breach of the contract on the part of the plaintiff, he sought, and obtained, a connection as an insurance salesman for a competing company, whereupon, the plaintiff commenced this action to enjoin him from violating other provisions of the same contract.

However, it is noted that, without making termination of the agreement contingent upon any happening or event, the defendant's original agency agreement with the plaintiff provides that "This Agreement can be terminated by either party upon written notice to the other;" that, under the original agency agreement, renewal commissions on policies originally sold by the Soliciting Agent are payable to him, for the second and all subsequent policy years, if he produces a stated amount of new business during his preceding "contract" year, and, in the event of termination of the agreement for any reason other than fraud, misfeasance or malfeasance of the Soliciting Agent, are payable to him for from one to five years (depending upon factors stated in the agreement) after termination of the agreement; and that the original agency agreement provides, in paragraph numbered "10" thereof, that:

> "In recognition of the unfairness to the Company and to other Agents of the Company of the Soliciting Agent's engaging in competition with the Company during the term of this Agreement and during the period for which renewal commissions are payable under this Agreement, it is hereby agreed that, if the Soliciting Agent shall during the term of this Agreement, without the written consent of the Company, solicit applications for contracts of health and/or accident insurance or solicit or enlist any representative of the Company to act in any capacity for another insurance company, association or society, no renewal commissions provided in this Agreement shall thereafter accrue or become due or payable under it or otherwise. If the Soliciting Agent shall, after the termination of this Agreement by either party, without the written consent of the Company, solicit or enlist any representative of the Company to act in any capacity for another insurance company, association or society, during the period for which renewal commissions would otherwise be payable under this Agreement, no renewal commissions provided

herein or otherwise shall thereafter accrue or become due or payable to the Soliciting Agent."

The defendant testified (as a witness called by the plaintiff) that, about the time that he got out of the hospital (which was some four months before the plaintiff mailed him written notice of the termination of their agreement for selling health and/or accident insurance for another insurance company), he decided that it would be advantageous to him to obtain employment with another insurance company that would offer him a better future, and did so; that he continued to service his old customers' policies with the plaintiff company, and, in spite of the plaintiff's denial of its consent for him to do so, started selling his new employer's policies to new customers, and, about two months before receiving the plaintiff's written notice of the termination of their agreement, effectuated his first transfer of an old customer from the plaintiff company to his new employer; and that, shortly after he got out of the hospital, the plaintiff refused to pay him the renewal commissions which he had theretofore earned under their agreement, and still owed him renewal commissions under the agreement.

The record discloses that, some two months after the defendant got out of the hospital, the plaintiff notified him, by letter, that it had heard of his sales activities for another insurance company and reminded him of the provisions in their original agreement for forfeiture of all future renewal commissions in such an event, and, about two weeks later, in answer to his request for such information, informed the defendant concerning the amount of renewal commissions theretofore earned by him, and that these amounts had been credited against his advance commissions on new business (provided for in the amendment to their original agreement), but lacked $529.66 of equaling such advance commissions. That letter also informed the defendant that, because of his sales activities for the other insurance company, all *future* renewal commissions to which he

might, otherwise, become entitled, had been forfeited under the provisions of their agreement, and also reminded the defendant of the contractual provisions involved herein.

The record also discloses that, during the calendar month following the month in which the defendant testified that he made his first transfer of an old group-policy customer from the plaintiff company to his new employer, the plaintiff, by letter, told the defendant that it had been informed of such transfer having been effectuated by him, but, because the company was not sure that it had not taken place before the warning contained in the letter last mentioned above, would not seek an injunction at that time, but would do so if informed of any other transfer of group or franchise policy customers. The plaintiff's written notice of termination of the agreement is dated about one month after the date of that letter, and, as hereinabove mentioned, the defendant admitted to effectuating a number of additional such transfers prior to receipt of such written notice of termination of the agreement and the commencement of this action.

While the record is not clear as to just exactly when, with respect to the defendant's receipt of that letter of termination of the agreement, the defendant had effectuated his first transfer of a group or franchise health and/or accident insurance customer from the plaintiff company to his new employer, it seems to be quite clear that the defendant had sold a number of group or franchise health and/or accident policies of his new employer to new customers prior to receiving notice of the forfeiture (under the original agreement) of all future renewal commissions because of those activities.

Defendant's final contention, that the plaintiff has been guilty of inequitable acts, is therefore simply not supported by the record and cannot be sustained.

Quite properly, because of the absence of any pleading by the defendant, the trial court did not adjudicate any questions con-cerning renewal commissions which might be, or might become, due and payable to the defendant.

Judgment affirmed.

IRWIN, C. J., BERRY, V. C. J., and WILLIAMS, JACKSON and HODGES, JJ., concur.

BLACKBIRD, J., concurs in result.