**KEY TEMPORARY PERSONNEL, INC.,**
an Oklahoma corporation, Appellee,

v.

**Debra L. COX, Appellant.**

**No. 82927.**

Court of Appeals of Oklahoma,
Division 1.

Aug. 23, 1994.

Certiorari Denied Nov. 10, 1994.

Ronald N. Ricketts, Tulsa, for appellee.

Max K. Naegler, Tulsa, for appellant.

## OPINION

HANSEN, Presiding Judge:

Appellant, Debra L. Cox (Cox), seeks review of the trial court's order which granted Appellee, Key Temporary Personnel, Inc. (Key), a preliminary injunction. Key brought this action against its former employee, Cox, for breach of her employment agreement and consulting agreement, requesting a permanent injunction and damages. Key provides temporary personnel services to companies in Tulsa, Oklahoma. Cox terminated her employment with Key in August, 1993 and immediately thereafter went to work for a competitor of Key. Key sought and obtained a preliminary injunction prohibiting Cox from soliciting or diverting any of Key's clients after Cox terminated her employment with Key.[1]

On appeal, Cox maintains the non-solicitation covenants contained in the employment agreement unreasonably restrain trade in violation of 15 O.S.1991, § 217, and therefore, are not enforceable. She also argues this appeal is not moot, that the non-solicitation provisions cannot be cured by judicial modification, and that the oppressive work atmosphere at Key prohibits Key from enforcing these provisions. The parties are *not* appealing Key's entitlement to a temporary injunc-

tion for failure to meet the requisites for injunctive relief.

We first address Key's proposition this appeal is moot. The preliminary injunction remained in effect until May 13, 1994. Cox filed her petition in error with this Court on January 21, 1994. Mootness on appeal is a state or condition which prevents an appellate court from rendering effective relief. *Smith v. State ex rel. Board of Regents of Oklahoma State University*, 846 P.2d 370, 371, dissent nt. 3 (Okla.1993). This Court will not decide abstract or hypothetical questions where no practical relief is possible. *Id.* Where issues remain to be resolved, for instance, where a party is still potentially liable, the granting of injunctive relief and a review thereof are not moot. *Manuel v. Oklahoma City University*, 833 P.2d 288 (Okla.App.1992); *Moore v. White*, 323 P.2d 352 (Okla.1958). Key filed this action seeking injunctive relief *and damages* caused by Cox's alleged violations of the employment agreement. Although the period enjoining Cox from soliciting certain clients has run, Cox still has potential liability for any breach which may have occurred before the injunction expired. Accordingly, this appeal is not moot.

The basis of Key's motion for preliminary injunction was paragraph 6(D) of the employment agreement executed May 18, 1990. That paragraph provides:

(D) Employee covenants and agrees that if Employee's employment with the Company ceases for any reason, Employee shall not for a period of nine (9) months immediately following the cessation of such employment (regardless of whether such cessation is due to, or caused by the breach of this Agreement by either party or whether such cessation is voluntary or involuntary) for himself or herself or on behalf of any other person, persons, partnership, corporation, or other entity, directly or indirectly solicit, divert or attempt to solicit or divert any client of the Company, provided that client was a client of the Company at the time of the Employee's termination and provided further the client remains a

1. Review of this interlocutory order is permitted under 12 O.S.1993 Supp., § 993(A)(2).

client of the Company during the nine month non-solicitation period. Employee agrees that in the event of a breach or the threat of a breach, hereof, the Company shall be entitled to, in addition to any other remedies and damages available, to an injunction to restrain the violation of this covenant.

The trial court determined Cox terminated her employment with Key on August 13, 1993 and that Key was entitled to a preliminary injunction until May 13, 1994. During the nine-month period, the trial court enjoined Cox from "directly or indirectly soliciting, diverting, or attempting to solicit or divert the temporary service business" of (a) Key clients which were accounts assigned to Cox during her employment with Key and (b) Key clients, although not assigned to Cox, were known to be Key clients by Cox while she was employed by Key. The trial court's order further provided:

> For the purposes of this preliminary injunction, a Key client shall no longer be deemed a Key client if that client has not purchased temporary services from Key for a continuous period of time longer than six (6) months.

The injunction order had attached to it two exhibits: a list of Key clients which were assigned to Cox during her employment with Key and a list of clients although not assigned to Cox, were known by Cox to be Key clients. The order, dated December 29, 1993, ordered Key to provide to Cox by January 1, 1994, the last date on which the Key clients listed on these exhibits purchased temporary services from Key. Thereafter, Key was required, on the first and fifteenth of each month while the order was in effect, to provide a list to Cox's counsel of any Key clients on either list that, during the previous six months period, have not purchased temporary services from Key.[2] Finally, the order provided:

> Notwithstanding the foregoing, while this injunction is in effect, the Defendant is entitled to make a proposal for temporary services or accept orders for temporary services from any of Key's clients she is prohibited from soliciting or diverting by this injunction, if those Key clients request proposals or services from Defendant without Defendant's solicitation.

■ The question of whether a particular contract provision is contrary to public policy, and thus violative of 15 O.S.1991, § 217, is ordinarily a question of law. *Cohen Realty, Inc. v. Marinick*, 817 P.2d 747 (Okla.App. 1991). 15 O.S.1991, § 217 provides:

> Every contract by which any one is restrained from exercising a lawful profession, trade or business of any kind, otherwise than as provided by Sections 218 and 219 of this title, is to that extent void.[3]

■ Section 217 prohibits only those contracts in *unreasonable* restraint of trade. *Tatum v. Colonial Life & Accident Ins. Co*, 465 P.2d 448 (Okla.1970); *Bayly, Martin & Fay, Inc. v. Pickard*, 780 P.2d 1168, 1172 (Okla.1989). Section 217 is not an absolute prohibition of all restrictions of trade: a restriction's enforceability is determined by weighing its reasonableness. *Bayly*, at 1172. If a contractual provision is unreasonable, judicial modification of a covenant not to compete "is justified if the contractual defect can be cured by imposition of reasonable limitations concerning the activities embraced, time, or geographical limitations." *Bayly*, at 1173. A covenant not to compete cannot be judicially modified if essential elements of a contract must be supplied. *Bayly*, at 1169.

In *Tatum*, the Oklahoma Supreme Court held a contractual provision, similar to the one in this case, did not violate § 217. In *Tatum*, the ex-employee was enjoined for a period of two years after his employment terminated, from selling or attempting to sell, any form of accident or health insurance to any of the company's insureds and from inducing any of the company's insureds to cancel, lapse, or fail to renew their policies with the company. The injunction was based

---

**2.** The order provides Key shall provide to Cox a copy of an *invoice* or other evidence showing the last date of *purchase* of temporary services.

**3.** Neither party has argued the exceptions contained in Sections 218 and 219 regarding the sale of good will or dissolution of a partnership apply.

upon the employee's admitted violations of covenants in the employment agreement. The primary question in that appeal was whether the contractual provision was void under 15 O.S.1961, § 217. In *Tatum,* as here, the contractual provision did not restrain the ex-employee from exercising a lawful profession, trade, or business. It simply required the ex-employee, for a period of time, to maintain a "hands-off" policy with respect to those whom he knows are clients of the employer. *Tatum,* at 451.

The Court in *Bayly, Martin & Fay, Inc. v. Pickard,* 780 P.2d 1168 (Okla.1989) however, did conclude the contractual provision at issue there was unreasonable and that judicial modification could not be utilized to save it. A comparison of the covenants in *Bayly* and in this action show the restrictions in *Bayly* were much broader than those agreed to by Cox. Here, Cox is prohibited only from "soliciting or diverting" Key's clients (who remain Key clients) for nine months. In *Bayly,* the covenant required the ex-employee to not "solicit, accept for service, or receive any commissions, fees or income attributable to the sale of, insurance business of any kind or character" from any client of the company at any time within three years. In *Bayly,* the covenant was not restricted to current clients of the company but reached prospective customers too. Nor were the restrictions in *Bayly* limited to a prohibition of selling the same type of insurance as that sold by the company: the ex-employee was prohibited from selling insurance of any kind. Finally, the covenants in *Bayly* denied the ex-employee the right to *accept* for service any of the company's clients that may contact him for the purchase of insurance. There are no such provisions in the covenant before us.[4]

On appeal, Cox argues the non-compete provision, even as modified, is "vague and much broader than necessary" to protect any legitimate interest Key might have, because the term "client" is not defined, a "diversion" could occur without solicitation, the provision prohibits Cox from soliciting for a *type* of business she did not sell to customers while employed at Key and in order to prohibit

Cox from soliciting the business of a client, a reasonable covenant would have a requirement that Cox must have gained some "information" about the customer. Cox does admit the modifications made by the trial court narrow the non-compete provision.

Her arguments regarding the word "client" are unpersuasive. The provisions in the injunction specified who would be considered a "client" for purposes of the non-solicitation provision and as Cox admits, substantially limited whom Cox was prohibited from soliciting. Similarly, her arguments that a "diversion" could actually be a simple "acceptance" of business from a Key client are contrary to the common definition of the word "diversion" and the trial court's order which specifically authorizes her to accept non-solicited business. Her argument that she should not be prohibited from soliciting Key clients over whom she has no "knowledge" or "information" is also unpersuasive. The trial court's order enjoins only her solicitation over Key clients which were assigned to her or which Cox *knew* to be Key clients while she was employed. She has not indicated what quantum of knowledge should be required before a non-compete provision becomes reasonable and enforceable.

Cox last attacks the provision arguing it restrains her from soliciting from Key clients a different *type* of business than she sold to them while employed with Key. The record shows Cox was employed as an "account manager" whereby she sold administrative and clerical temporary services exclusively. Other employees at Key sold industrial services. Cox maintains the covenant not to compete is unreasonable because it prohibits her from soliciting Key clients who purchased industrial services from Key, a type of service which she did not sell. The covenant is not limited to a specific type of Key client.

The record shows that Key was in the business of supplying temporary personnel for administrative, clerical and industrial services and that at any given time or at various times, a client could request personnel in any or all three areas. Although Cox herself

---

4. Indeed, the trial court's order specifically provides Cox is not prohibited from accepting the business of Key clients whom she has not solicited.

only received compensation for clerical and administrative temporary services purchased by customers she generated or were assigned to her for servicing, the record shows Cox and other account managers serviced the *same* clients although for different temporary services. The non-compete provision is not fatally overbroad and unreasonable for this reason.[5]

■ Finally, Cox argues the covenant not to compete should not be enforced against her because of the oppressive work atmosphere at Key which led to her leaving the job. She reasons since Key did not do equity, it isn't entitled to equity in the form of an injunction. At the hearing, Cox presented evidence that she sought new employment because she feared for her job security at Key. The owners of Key were in the process of divorcing and had drawn the employees into taking "sides" in the tumultuous divorce. The trial court stated at the hearing that the owner of Key had created a "ridiculous" atmosphere. However, the fact remains that it was Cox herself, that terminated her employment with Key.

Cox has pointed to no language in the agreements which provide the non-solicitation provisions would not be enforced in the event Cox left for personal reasons or because of fear of losing her job. In fact, the covenant specifically provides it applies regardless of whether cessation in employment is "due to, or caused by the breach of this Agreement by either party or whether such cessation is voluntary or involuntary". Nor has Cox pointed us to persuasive authority.[6]

The reasons surrounding Cox's decision to seek employment elsewhere may be relevant to determining whether equitable relief is proper. However, they are not relevant to determining whether the non-solicitation provisions, and the trial court's modification thereof, are reasonable.

The trial court's modification of the non-solicitation provision imposed reasonable limitations concerning who would be considered a "client" of Key. By defining and limiting the scope of the term "client", the trial court did not supply "essential elements of the contract" which is prohibited by *Bayly*. We hold that the contractual provision at issue, paragraph 6(D) of the employment agreement, as modified by the trial court, does not violate 15 O.S.1991, § 217 and that therefore, the order granting the preliminary injunction is AFFIRMED.

JONES, J., dissents.

BAILEY, J., concurs.

**5.** Cox cites *Tatum,* supra, as authority that she should not be restrained from soliciting Key clients for temporary services in areas in which she did not sell. In *Tatum*, the ex-employee was restrained *by the covenant* from selling only the specific type of insurance which he sold: accident and health. The provision did not preclude the ex-employee from selling any other form of insurance to those insured with the company.

In *Bayly*, the covenant not to compete prohibited the ex-employee from competing in "lines of business" unrelated to the insurance industry. Key's "line of business" is providing temporary services. We agree with Key that the relevant inquiry is into the type of service *offered by Key,* not just the area from which Cox derived compensation. See *Bayly*, page 1173, note 19.

**6.** She cites *Kelsey–Hayes Co. v. Maleski,* 765 F.Supp. 402 (E.D.Mich.1991) as authority that a

non-compete provision will not be enforced where an employee quits because of no job security. The facts of that case indicate the employee was told his work was deficient and was placed on probation. The employee left work because he felt insecure. The court dismissed the employer's suit, finding the employee's conduct did not violate the covenant. The court did not hold that the provision was unenforceable because the employee feared for his job. Similarly, the facts in *In re: Golden Dis. Ltd.,* 128 B.R. 342 (Bankr. S.D.N.Y.1991) are distinguishable. There, a Chapter 11 debtor sued former employees for tortious interference with customer relations. The court held the debtor was not entitled to an injunction. The employees in *Golden* were terminated, a fact not present in this action.