1998 OK CIV APP 122

**THAYNE A. HEDGES REGIONAL SPEECH AND HEARING CENTER, INC., an Oklahoma non-profit corporation, Plaintiff/Appellee,**

v.

**Kathleen BAUGHMAN, Defendant/Appellant.**

**No. 90,457.**

Court of Civil Appeals of Oklahoma, Division No. 3.

July 28, 1998.

James R. Cox, Enid, Oklahoma, for Plaintiff/Appellee.

Dennis C. Roberts, Oklahoma City, Oklahoma, for Defendant/Appellant.

## OPINION

Opinion by CAROL M. HANSEN, Judge:

¶1 Defendant/Appellant, Kathleen Baughman, seeks review of the trial court's order enjoining her from rendering services as a speech/language pathologist with the State of Oklahoma, Department of Human Services (DHS), at its Northern Oklahoma Resource Center of Enid (NORCE) and its Robert M. Greer Center. Plaintiff/Appellee, Thayne A. Hedges Regional Speech and Hearing Center, Inc. (Hedges), hired Baughman as a speech/language pathologist in January 1996. Her employment contract stated she would provide professional and supervisory services as assigned to Hedges' "contracted agencies, individual clients, consultant agreements and/or contracts." It also provided,

> The employee agrees not to contract with, for or by any group, agency, client, and/or entity contracting with or served by [Hedges] for a period of two (2) years after termination of employment with [Hedges].

Hedges assigned Baughman to work at NORCE fulfilling its contract with DHS to provide assessments and speech/language therapy services. She did so until she resigned from Hedges effective September 30, 1997 to accept employment with DHS as a speech/language pathologist at NORCE. Hedges then brought this suit and sought a

temporary injunction restraining Baughman from working for DHS. After a hearing, the trial court granted the temporary injunction. Baughman appeals pursuant to 12 O.S.Supp. 1997 § 993(A)(2).

¶ 2 Baughman contends the subject agreement not to compete is overbroad and unreasonable, and therefore unenforceable pursuant to 15 O.S.1991 § 217. Whether a particular contract provision violates § 217 is ordinarily a question of law. *Key Temporary Personnel, Inc. v. Cox (Key)*, 1994 OK CIV APP 123, 884 P.2d 1213, 1215. That statute provides,

> Every contract by which any one is restrained from exercising a lawful profession, trade or business of any kind, otherwise than as provided by Sections 218 and 219 of this title, is to that extent void.

The Oklahoma Supreme Court has interpreted § 217 to allow reasonable restrictions on the exercise of a lawful profession, trade, or business. *Bayly, Martin & Fay, Inc. v. Pickard (Bayly)*, 1989 OK 122, 780 P.2d 1168, 1170–1171. A covenant not to compete may be judicially modified to make it reasonable provided the court is not required to supply essential elements of a contract. *Id.* at 1172. In determining reasonableness, courts have considered the extent of the restrictions and whether they fairly protect the employer's legitimate interests. See *Tatum v. Colonial Life & Acc. Ins. Co. of America (Tatum)*, 1970 OK 27, 465 P.2d 448, 451, and *Key*, 884 P.2d at 1216.

¶ 3 As in *Tatum* and *Key*, the contract in this case does not restrain Baughman from exercising her profession, even in competition with Hedges; it only requires a "hands-off" policy as to Hedges' clients. By its own terms, it does not extend beyond the types of activity in which Hedges engages or the geographic area in which Hedges operates. The time period is no more than that approved in *Tatum*. The contract is no broader than it needs to be to protect Hedges' legitimate interest in maintaining its existing contracts and clients. We hold it does not unreasonably interfere with the exercise of a lawful profession, trade, or business.

¶ 4 Baughman next contends the trial court erred in granting a preliminary injunction because Hedges failed to establish the requisite elements. The four criteria considered in deciding an application for preliminary injunction are "1) the applicant's likelihood of success on the merits, 2) irreparable harm to the party seeking relief if injunctive relief is denied, 3) relative effect on the other interested parties, and 4) public policy concerns arising out of the issuance of injunctive relief." *Dorchester Hugoton, Ltd. v. Dorchester Master Ltd. Partnership*, 1996 OK CIV APP 60, 925 P.2d 1222, 1225. In an equitable action, we will review the evidence but will not disturb an order granting or refusing an injunction unless the trial court abused its discretion or the judgment is clearly against the weight of the evidence. *Id.*

¶ 5 Baughman argues Hedges was unlikely to succeed on the merits of its claim. However, she does not dispute she left her employment with Hedges to accept a position with DHS doing work identical to that she performed under Hedges' contract with DHS. Instead, the sole defense she raises to the merits of Hedges' claim is the unenforceability of the covenant not to compete. Because we have held the covenant enforceable as a matter of law, we conclude Hedges was likely to succeed on the merits.

¶ 6 Baughman next contends Hedges failed to show irreparable harm. Alan Livingston, executive director of Hedges, testified Hedges was a non-profit organization that provided evaluation, diagnosis, and therapy for people with hearing, speech, and communication problems. It provided those services in-house, but also contracted with other entities to provide services to their clients. Livingston estimated 92 to 93 percent of its speech services were provided through outside entities, whereas 98 percent of the audiology services were provided in-house. He testified Hedges' contract with DHS to provide speech services for NORCE was necessary to support itself and its loss might "shut our doors." Although DHS could decline to renew the yearly contract at any time, it had been renewed each year since its inception. The current contract was for up to 4,000 hours, and Hedges employed three speech/language pathologists, including

Baughman, to perform services under the contract.

¶ 7 Livingston testified Hedges' board of directors added the non-competition clause to its contracts with employees after NORCE had tried to hire another of Hedges' employees. He agreed that if the non-competition clause could not be enforced, Hedges would be acting as a hiring agency or personnel agency for the state. He said soon after Baughman resigned, he told the administrator at NORCE he was doing a search to replace her. He "was told not to do that because they were full." Livingston testified the result was "[w]e have a contract, but we only have a partial part of that contract. We have lost one full-time equivalent position out there." The only evidence Baughman offered controverting this testimony was her own testimony that NORCE was in a state of downsizing as a result of "a lot of the clients going into group homes and therefore leaving the institution," and that she did not believe she was the cause of Hedges' contract being threatened or the downsizing.

¶ 8 Baughman argues this evidence shows only "that a contract, which is completely discretionary by the State as to the number of hours, would be reduced if Ms. Baughman accepted the employment." Hedges argues it was likely to lose the NORCE contract completely, an eventuality which could result in the closing of the Hedges Center. The evidence did not show Hedges had already lost more than part of the contract, but supported the inference DHS was using Hedges to recruit, screen, and train prospective employees, reaping the benefits of that process while Hedges bore the costs. Although DHS may have been downsizing, it did not appear to be reducing its level of speech therapy services, inasmuch as it would have three speech/language pathologists rendering those services both before and after hiring Baughman. The weight of the evidence supports the conclusion Hedges would suffer irreparable harm, absent the injunction, by losing its contract as a result of its employees leaving Hedges to perform identical work as in-house speech/language therapists at NORCE.

¶ 9 Baughman contends the irreparable harm to her from granting the preliminary injunction outweighed any irreparable harm to Hedges because she would be impoverished. However, at the hearing Hedges' counsel advised the trial court, "We are telling her today in this courtroom that if she wants to come back and work under her contract and continue to provide services at Hedges she can do so." Therefore, the consequences to Baughman were no more than she agreed to when she accepted the employment contract with Hedges.

¶ 10 Lastly, Baughman argues the public interest is hindered by the preliminary injunction because it nullifies the State's discretion in determining how its budget will be spent. Hedges argues the injunction does not preclude the State of Oklahoma from making expenditures as it chooses, but simply prevents the State from hiring this individual because of her contract. The impact on the State is not of such magnitude as to be injurious to the public.

¶ 11 For these reasons, we hold the trial court did not abuse its discretion and its judgment is not clearly against the weight of the evidence. Therefore, its order granting the preliminary injunction is **AFFIRMED**.

ADAMS, J., and BUETTNER, P.J., concur.