2004 OK CIV APP 93

Charles **OLIVER** and Pharmacy Solutions, L.L.C., Plaintiffs/Appellees,

v.

**OMNICARE, INC.,** and NCS Healthcare of Oklahoma, Inc., Defendants/Appellants.

No. 98,981.

Court of Civil Appeals of Oklahoma, Division No. 1.

Oct. 8, 2004.

J. Michael DeYong, J. Michael DeYONG, P.C., Edmond, OK, for Plaintiffs/Appellees.

Beauchamp M. Patterson, McAfee & Taft, Oklahoma City, OK, for Defendants/Appellants.

## OPINION

ADAMS, Judge.

¶ 1 Omnicare, Inc. (OI) and NCS Healthcare of Oklahoma, Inc. (NCS) (collectively, Defendants) appeal the trial court's judgment in favor of Charles Oliver (Oliver) and Pharmacy Solutions, L.L.C. (PS) (collectively, Plaintiffs) which declared that the non-competition provision in the Employment Agreement executed by NCS and Oliver on August 13, 1996, is void and unenforceable as an unlawful restraint of trade contrary to Oklahoma law and public policy.[1] Because the record presents disputed issues of fact which are material to determining the applicability of a statutory provision allowing restraints of trade in connection with the sale of the goodwill of a business, we reverse the trial court's judgment and remand the case for further proceedings.

¶ 2 The procedural posture of this case at the time the trial court announced its ruling is somewhat confusing. At issue, and scheduled for hearing, were both sides' requests for a temporary injunction to either prevent or require enforcement of the non-competition provision. Prior to that time, both sides had filed pleadings and briefs outlining their respective positions and attaching what can best be described as evidentiary material which might be expected in summary adjudication proceedings.[2] Rather than allowing

1. Plaintiffs withdrew their request for temporary injunctive relief, and the trial court's declaratory judgment also denied Defendants' request for temporary injunctive relief prohibiting Plaintiffs from violating the terms of the non-competition provision. Our reversal of the trial court's declaratory judgment also has the effect of allowing Defendants to re-urge their request for injunctive relief if the trial court ultimately determines the non-competition provision is enforceable or may be modified to be enforceable.

2. Plaintiffs had attached a copy of the Employment Agreement to their petition. In subsequent pleadings and briefs, Defendants attached copies of three sales agreements, dated the same day as the Employment Agreement, and an affidavit, which tended to demonstrate that the Employment Agreement was an integral part of a sales transaction by which three companies, including the goodwill, were purchased by Defendants from Oliver and another stockholder. Oliver responded with his own affidavit in which he

the parties to present evidence at a hearing, the trial court concluded, apparently based on the evidentiary material which had been presented, as a matter of law, that the "non-competition provision contained in Section 3.1 of the August 13, 1996 Employment Agreement ... is overly broad, unreasonable in scope and therefore in violation of the law and public policy of the State of Oklahoma."[3] The trial court further found that the non-competition provision could not "be modified without requiring the court to supply essential, material terms to the agreement."

¶ 3 In so ruling, the trial court relied on *Bayly, Martin & Fay, Inc. v. Pickard*, 1989 OK 122, 780 P.2d 1168, in which the Court addressed the application of 15 O.S.1991 § 217 to a covenant not to compete in an employment agreement and reaffirmed its prior holdings that § 217 prohibits only unreasonable restraints on the exercise of a lawful profession, trade or business.

■ ¶ 4 Defendants argue the trial court erred in not following the parties' mutual choice, expressed in paragraph 5.4 of the Employment Agreement, to have the law of Ohio govern the provisions and enforcement of the Employment Agreement. The general rule is that a contract will be governed by the laws of the state where the contract was entered into unless otherwise agreed *and* unless contrary to the law or public policy of the state where enforcement of the contract is sought. *Telex Corporation v. Hamilton*, 1978 OK 32, 576 P.2d 767; *Williams v. Shearson Lehman Brothers, Inc.*, 1995 OK CIV APP 154, 917 P.2d 998. Because the parties "otherwise agreed" to being governed by Ohio law, the issue becomes whether its application to the Employment Agreement's non-competition provision would violate the law or public policy of Oklahoma.

■ ¶ 5 As the trial court correctly identified, the question of whether a covenant not to compete or non-competition provision is contrary to public policy is a question of law for the Court. *See Loewen Group Acquisition Corp. v. Matthews*, 2000 OK CIV APP 109, 12 P.3d 977. Public policy is synonymous with the policy of the law, expressed by the manifest will of the state which may be found in the Constitution, statutory provisions, and judicial records. *Cameron & Henderson v. Franks*, 1947 OK 232, 199

averred he owned a small interest and did not own or control the goodwill of those companies.

3. The Employment Agreement had a five-year term and provided in its Recitals that Oliver "is a principal officer and shareholder of Thrifty Medical Supply, Inc. ("Thrifty") and Northside Pharmacy, Inc. ("Northside") ... and a principal officer and member of Thrifty Medical of Tulsa, L.L.C.... ("Thrifty Tulsa")," and that NCS "is acquiring substantially all of the assets" of Thrifty, Northside and Thrifty Tulsa, pursuant to the Asset Purchase Agreement, Merger Agreement, and Stock Purchase Agreement. These three agreements each incorporated by reference the non-competition provision in paragraph 3.1 of the Employment Agreement, which provides:

Employee agrees that *during the seven (7) year period commencing on the date of this Agreement*, he shall not directly or indirectly, without the prior written approval of the Board, enter into the employ of, render any services or assistance to, acquire any financial interest in, or otherwise become associated in any way with any person or entity ("Competitor"), whether in the capacity of principal, agent, partner, officer, director, employee, consultant, shareholder, or otherwise, which provides pharmaceuticals; drugs, biologicals, medical devices, durable medical equipment or other health or medical supplies to nursing homes or other institutional care facilities in the states of Oklahoma, Ohio, Indiana, Pennsylvania, Kentucky, Illinois, Wisconsin, Minnesota, Michigan, Maine, New Hampshire, Massachusetts, Vermont, Connecticut, New York, New Jersey, Missouri, Iowa, Kansas or Oregon, or to individuals residing in any such home or facility in such geographic region. Nothing in this Section 3 shall prevent Employee from being a member or officer of or from participating in the activities of any trade or professional association, or from acquiring an equity interest in the Company or any of its affiliates or an equity interest of less than one percent (1%) in a Competitor whose shares are traded on a national securities exchange or over-the-counter, or from performing consulting or referral services to or maintaining his interest in the Retained Interests, subject to the limitations and conditions of Section 1 hereof.

Notwithstanding the foregoing provisions of this Section 3.1, following his employment hereunder, Employee shall be permitted to provide services as a pharmacist in a hospital pharmacy, mail-order pharmacy, or a retail pharmacy so long as such retail pharmacy services less than two hundred (200) long-term care beds and Employee has no contact with administrators or owners of such long-term care services. (Emphasis added.)

Okla. 143, 184 P.2d 965. After the trial court determines the public policy or law, it is then the fact finder's duty to examine the facts and decide if the public policy was violated. *Pearson v. Hope Lumber & Supply Company, Inc.,* 1991 OK 112, 820 P.2d 443.

¶ 6 Ohio law, then, may be only used to govern this agreement if it does not violate the provisions of Oklahoma law with respect to contracts in restraint of trade. Accordingly, the trial court correctly looked to Oklahoma law to determine whether the public policy of Oklahoma would be violated by enforcement of the non-competition provision.

¶ 7 Defendants also argue the trial court erred in applying Oklahoma law to the entire transaction of which the Employment Agreement was unquestionably just a part. We agree. The law in force when an agreement is made effective determines the validity and effect of the agreement. *Welty v. Martinaire of Oklahoma Inc.,* 1994 OK 10, 867 P.2d 1273. When the Employment Agreement was executed by Oliver and NCS in 1996, 15 O.S.1991 § 217, entitled "Restraint of trade" provided, as it had since 1909, that "Every contract by which any one is restrained from exercising a lawful profession, trade or business of any kind, *otherwise than as provided by Sections 218 and 219 of this title,* is to that extent void." (Emphasis added.) Under the "clear meaning" of § 217, *see Clare v. Palmer,* 1949 OK 8, 203 P.2d 426, 201 Okla. 186, there were only two statutory exceptions to its prohibition of restraints of trade–15 O.S.1991 § 218 and § 219.[4]

¶ 8 The version of § 218 in effect in 1996 is identical to the current version, 15 O.S.2001 § 218, entitled "Restraint of trade—Exception as to sale of goodwill," which provides:

> One who sells the goodwill of a business may agree with the buyer to refrain from carrying on a similar business within a specified county and any county or counties contiguous thereto, or a specified city or town or any part thereof, so long as the buyer, or any person deriving title to the goodwill from him carries on a like business therein. Provided, that any such agreement which is otherwise lawful but which exceeds the territorial limitations specified by this section may be deemed valid, but only within the county comprising the primary place of the conduct of the subject business and within any counties contiguous thereto. (Emphasis added.)

Since 1910, if the sale of goodwill exception applies, judicial modification of the contract is allowed when duration and geographical limitations exceed those set by § 218. *See Clare v. Palmer,* and *Wesley v. Chandler,* 1931 OK 477, 152 Okla. 22, 3 P.2d 720.

¶ 9 As § 217 and its exceptions have been applied by the Supreme Court, if the facts raise the issue of the applicability of either § 218 or § 219, that issue must be decided first; if neither exception applies, then and only then does the issue become whether the restraint of trade is void and enforceable under § 217. See *Bayly, Martin & Fay, Inc. v. Pickard,* 1989 OK 122, 780 P.2d 1168; *Tatum v. Colonial Life & Acc. Ins. Co. of America,* 1970 OK 27, 465 P.2d 448; and *E.S. Miller Laboratories v. Griffin,* 1948 OK 149, 194 P.2d 877.

¶ 10 Section 218's language "one who sells the goodwill of a business" has previously been interpreted by the Supreme Court. In *Key v. Perkins,* 1935 OK 142, 46 P.2d 530, 173 Okla. 99, the Court held that the owner of an *appreciable* interest in the stock, property, and assets of a corporation has a proportionate interest in the goodwill of the business, and that on a sale thereof, such owner is bound by a contemporaneous agreement, supported by an adequate consideration, not to engage in a similar business within the territorial and time limits provided by § 218. In *Griffin v. Hunt,* 1954 OK 87, 268 P.2d 874, the Court concluded that § 218 applied to the sale of a veterinary practice to the plaintiff by heirs of the former owner/veterinarian and found valid the covenant not to practice veterinary medicine for five years in the same county executed by the defendant/veterinarian who *had no interest in the*

---

4. Section 219, which permits certain limited restraints of trade in partnership dissolutions, is not at issue in this case.

*practice nor owned any stock therein,* explaining:

> Plaintiff did not simply buy buildings, equipment and instruments. Instead, he sought to and did buy a going business, along with its good will. *The defendant, Dr. Griffin, was the one who was operating the business and had developed the good will.* Plaintiff made it plain that he was not interested in acquiring the hospital and the facilities without having a binding covenant from the defendant that he would not engage in the practice in that county for a period of five years. (Emphasis added.)

Further, in the precise case relied upon by the trial court, *Bayly, Martin & Fay, Inc. v. Pickard,* the Court first decided that the minuscule amount of stock—0.8%—was *insufficient* to support an argument of § 218's applicability, and then determined that the employment agreement's non-competition provision was unreasonable under § 217 and could not be judicially modified.

¶ 11 As in *Bayly, Martin & Fay, Inc. v. Pickard,* § 218's applicability to the Employment Agreement's non-competition provision was clearly raised by Defendants' arguments and their evidentiary materials tending to support the fact that Oliver sold his goodwill in 1996 during the sale of his stock/interest in the three businesses. This evidentiary material was disputed by Plaintiffs. However, this controverted fact is determinative of § 218's applicability and must be decided in order to determine Oklahoma's public policy on the non-competition provision involved in this declaratory judgment action.

¶ 12 Under the Oklahoma Declaratory Judgment Act (the Act), district courts may, in cases of actual controversy, determine rights, status, or other legal relations, including but not limited to a determination of the construction or validity of any foreign judgment or decree, deed, contract, trust, or other instrument or agreement or of any statute. 12 O.S.2001 § 1651. When a proceeding under the Act involves the determination of an issue of fact, such issue must be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending. 12 O.S.2001 § 1656. The trial court's order improperly short-circuited that process, essentially granting summary adjudication.

¶ 13 On this record, § 218's applicability can not be determined, as a matter of law, because there are disputed facts as to Oliver's precise ownership and goodwill, if any, in the businesses that were part of the 1996 sales transaction, *i.e.,* if he was an owner, the record is insufficient to determine if his interest was "appreciable" under *Key* or "minuscule" under *Bayly, Martin & Fay, Inc. v. Pickard,* and even if he was not an owner, the record is insufficient to determine if Oliver had developed goodwill in the businesses under *Griffin.*

¶ 14 We conclude the trial court erred, as matter of law, by deciding the non-competition provision was contrary to Oklahoma's public policy on restraints of trade because the evidentiary materials show disputed issues of fact and are ambiguous on other issues of fact material to the applicability of § 218. Only after these factual issues are "tried and determined in the same manner as issues of fact are tried and determined in other civil actions" may a decision be made concerning the application of § 217 and § 218. The trial court's judgment is reversed, and the case remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

JOPLIN, J. (sitting by designation), concurs, and BUETTNER, V.C.J./P.J., concurs in result.