2011 OK CIV APP 88

**SCANLINE MEDICAL, L.L.C., d/b/a Hummel Medical, an Oklahoma Limited Liability Company, Plaintiff/Appellant,**

v.

**Chris BROOKS, an individual, Defendant/Appellee.**

No. 108,287.

Court of Civil Appeals of Oklahoma, Division No. 3.

May 27, 2011.

Tony Gould, George H. Brown, Brown & Gould, P.L.L.C., Oklahoma City, Oklahoma, for Appellant.

Beverly S. Pearson, Cara A. Lowe, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Oklahoma, for Appellee.

LARRY JOPLIN, Judge.

¶1 Plaintiff/Appellant Scanline Medical, L.L.C., d/b/a Hummel Medical, an Oklahoma Limited Liability Company (Plaintiff) seeks review of the trial court's order granting the motion for summary judgment of Defendant/Appellee Chris Brooks, an individual (Defendant), on Plaintiff's claim for breach of contract. In this accelerated review proceeding, Plaintiff challenges the trial court's or-

der as affected by errors of both law and fact.

¶ 2 Defendant sold medical products manufactured by the companies, Spinal Concepts or Orthovita, through the distributor, Hummel Medical, Inc. In 2002, Defendant executed two Independent Sales Representative Agreements, one covering the sale of Spinal Concepts products, and one covering products made by Orthovita. The agreements extended for a three year term, with options to renew, and provided for payment of commissions to Defendant on his sales. The agreements also contained identical provisions prohibiting Defendant's solicitation, service and sale to previous clients of products manufactured by Spinal Concepts or Orthovita for one year after the agreements terminated:

> 6. *Non–Competition.* Representative agrees during the term of this Agreement and for a one (1) year period commencing on the date of termination of this Agreement, that in the (i) United States, (ii) State of Oklahoma and contiguous states, (iii) the Territory, during the term of this Agreement, including any renewals or extensions thereof, that it will not, either directly or indirectly, distribute, market, promote, solicit the future sale of, or sell, any medical device product competitive with any of the Spinal Concepts Products, or in any way have a financial interest . . . in any business engaged in the distribution, solicitation, promotion or sale of any medical device product competitive with any of the Spinal Concepts Products.
>
> . . . .
>
> 13. *Termination.* If (i) Representative ceases to render sales representative services as provided in this Agreement, including but not limited to Representative's death during the term . . ., (ii) Representative commits any Event of Default hereunder, or (iii) Company ceases to be a distributor of the Spinal Concepts Products under the Distribution Agreement for any reason, this Agreement shall immediately terminate.[1]

¶ 3 In 2004, Spinal Concepts terminated its agreement for sale of its products through Hummel. Nevertheless, Defendant continued to sell Spinal Concepts products and collect commissions on the sales through another distributor.

¶ 4 In March 2006, Hummel sold the business to Plaintiff. Following the sale, Defendant continued to sell medical products distributed by Plaintiff, for which he collected commissions, but Defendant refused to execute new sales representative agreements when requested by Plaintiff.

¶ 5 In August 2006, Defendant severed his relationship with Plaintiff. Defendant continued to sell Spinal Concepts products and collect commissions on the sales through the other distributor.

¶ 6 In October 2006, Plaintiff commenced an action against Defendant, seeking damages for the alleged breach of the non-competition clauses of the Independent Sales Representative Agreements, unjust enrichment, conversion and disclosure of trade secrets. Defendant filed a motion for partial summary judgment, arguing that the contracts had terminated by their own terms, that the contracts contained no provisions for assignment, and that Plaintiff consequently had no right to enforce the non-competition provisions.

¶ 7 The trial court granted Defendant's motion for partial summary judgment. Plaintiff dismissed the remainder of its claims without prejudice and commenced an appeal to challenge the trial court's order. *Scanline Medical v. Brooks,* Case No. 105,181. The Court of Civil Appeals reversed the order of the trial court and remanded for further proceedings, finding "issues of fact regarding whether the Brooks–HMI Agreement is a personal services contract, as well as issues of fact regarding whether Brooks acquiesced in the assignment by his actions subsequent to the sale to Scanline." *Scanline Medical v. Brooks,* Case No. 105,181, p. 4, ¶ 8, (Ok.Civ.App.Div.IV, August 29, 2008).

---

1. Paragraphs 6, 13 and 15.1 of the Orthovita contract are identical to the quoted paragraphs 6, 13 and 15.1 of the Spinal Concepts contract.

¶ 8 On remand, Defendant filed another motion for partial summary judgment, challenging the salesmen's contracts as unassignable personal service contracts, and the non-competition provisions thereof as overly broad, void, and unenforceable.

¶ 9 The trial court so held and granted partial summary judgment to Defendant. Plaintiff dismissed its remaining claims and commenced the instant appeal, complaining the trial court erred in holding the non-competition provisions void and unenforceable, and the matter stands submitted on the trial court record.[2]

### I. Standard of Review

¶ 10 "Summary relief issues stand before us for de novo review." *Reeds v. Walker*, 2006 OK 43, ¶ 9, 157 P.3d 100, 106–107. (Footnotes omitted.) "Summary judgment will be affirmed only if the appellate court determines that there is no dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Lowery v. Echostar Satellite Corp.*, 2007 OK 38, ¶ 11, 160 P.3d 959, 963–964. (Citations omitted.) "Summary judgment will be reversed if the appellate court determines that reasonable men might reach different conclusions from the undisputed material facts." *Id.*

### II. Non–Competition Agreements

¶ 11 "[T]he question of whether a covenant not to compete or non-competition provision is contrary to public policy is a question of law for the Court." *Oliver v. Omnicare, Inc.*, 2004 OK CIV APP 93, ¶ 5, 103 P.3d 626, 628–629; *Thayne A. Hedges Regional Speech and Hearing Center, Inc. v. Baughman*, 1998 OK CIV APP 122, ¶ 2, 996 P.2d 939, 941. " 'In determining whether a clear mandate of public policy is violated, courts should inquire whether the [challenged] conduct contravenes the letter or purpose of a constitutional, statutory, ... regulatory provision or scheme[,] [or] [p]rior judicial decisions.' " *Burk v. K–Mart Corp.*, 1989 OK 22, ¶ 18, 770 P.2d 24, 29.

¶ 12 In this respect, § 217 of title 15, O.S. 2001, provides:

> Every contract by which any one is restrained from exercising a lawful profession, trade or business of any kind, otherwise than as provided by Sections 218 and 219 of ... title [15, O.S.], or otherwise than as provided by [15 O.S.2001 § 219A] is to that extent void.

Section 219A(A) of title 15, O.S.2001, further provides:

> A person who makes an agreement with an employer, whether in writing or verbally, not to compete with the employer after the employment relationship has been terminated, shall be permitted to engage in the same business as that conducted by the former employer or in a similar business as that conducted by the former employer as long as the former employee does not directly solicit the sale of goods, services or a combination of goods and services from the established customers of the former employer.

These sections express the public policy of this state concerning covenants not to compete. Under § 219A(A), a non-competition agreement which proscribes the former employee from dealing with established customers of the former employer does not violate the public policy expressed in § 217 or § 219A, and is enforceable. *See also, e.g., Thayne A. Hedges Regional Speech and Hearing Center, Inc. v. Baughman*, 1998 OK CIV APP 122, ¶ 3, 996 P.2d 939, 941. A non-competition agreement which proscribes the former employee from any work "in the same business as that conducted by the former employer or in a similar business as that conducted by the former employer" runs contrary to the express terms of § 219A(A), violates the public policy there established, and is not enforceable.

¶ 13 We first note neither Plaintiff nor Defendant raise any issue concerning when the one-year non-competition period began. Indeed, Defendant conceded in his motion below that the one-year non-competition period began to run in March 2006 upon sale of Hummel to Plaintiff.

---

**2.** See, Rule 13(h), Rules for District Courts, 12 O.S. Supp.2002, Ch. 2, App.; Ok.S.Ct.Rule 1.36,

12 O.S. Supp.2003, Ch. 15, App. 1.

914

¶ 14 However, the Independent Sales Representative Agreements absolutely proscribe Defendant from "sell[ing] any medical device product competitive with any of the Spinal Concepts [or Orthovita] Products, or in any way [possessing] a financial interest ... in any business engaged in the distribution, solicitation, promotion or sale of any medical device product competitive with any of the Spinal Concepts [or Orthovita] Products." The effect of this provision proscribes Defendant, with any employer and any buyer, from exercising his profession of selling medical products.

¶ 15 By proscribing Defendant's exercise of his profession, we hold the Independent Sales Representative Agreements violate the public policy expressed in §§ 217 and 219A, and are not entitled to enforcement.[3]

¶ 16 We consequently hold the trial court did not err in granting partial summary judgment to Defendant. The order of the trial court is AFFIRMED.

MITCHELL, P.J., and BUETTNER, J., concur.

**3.** Having so held, we need not decide the question of whether the Independent Sales Representative Agreements are assignable.