2000 OK CIV APP 109

**LOEWEN GROUP ACQUISITION CORPORATION, Appellee,**

v.

**Randy L. MATTHEWS, an individual, Appellant,**

and

**RLM Investments, L.L.C., an Oklahoma Limited Liability Company; and, Matthews Funeral Home, L.P., an Oklahoma Limited Partnership, Defendants.**

No. 93400.

Court of Civil Appeals of Oklahoma, Division No. 4.

Decided June 6, 2000.

As Corrected June 26, 2000.

Certiorari Denied Sept. 20, 2000.

Raymond L. Vaughn, Jr., Matthew L. Winton, Legal Intern, Oklahoma City, OK, for Appellant.

Linda G. Alexander, Harris A. Phillips, Niemeyer, Alexander, Austin & Phillips, P.C., Oklahoma City, OK, for Appellees.

## OPINION

STUBBLEFIELD, J.:

¶ 1 This is an appeal from the trial court's order granting a temporary injunction to plaintiff in an action claiming breach of a non-competition provision of an employment contract. Based on our review of the record on appeal and applicable law, we vacate the order.

¶ 2 Loewen Group Acquisition Corporation (LGAC) purchased three funeral home businesses on July 3, 1997. Two of the businesses, Baggerley Funeral Home and Baggerley Greenlawn Funeral Home, were located in Edmond, Oklahoma, within three miles of each other. The third business, Baggerley Funeral Home South Chapel, was located in south Oklahoma City. Prior to and at the time of the purchase, Randy Matthews was employed as manager of Baggerley Funeral Home.

¶ 3 LGAC required the current employees of its newly purchased businesses to execute new employment agreements. Randy Matthews executed such an agreement, prepared by LGAC, on July 3, 1997. One provision in the agreement, paragraph 17, specified that

for three years following Matthews' termination of employment with LGAC:

> [He] shall not ... directly or indirectly, for his own account, or as a partner, member, employee, advisor or agent of any partnership or joint venture ... or as trustee, officer, director, shareholder, employee, advisor or agent of any corporation ... own, manage, join, participate in, encourage, support, finance, be engaged in, have an interest in, give financial assistance or advice to, permit his name to be used in connection with or be concerned in any way in the ownership, management, operation or control of, or be connected in any manner with any business which is or may be in the funeral, mortuary, cemetery, burial or funeral or cemetery insurance business (including pre-arrangement or pre-need), or any business related to any of the foregoing....

The contract provided the restrictions applied to an area within a fifteen-mile radius of any present location of a chapel.

¶ 4 On October 7, 1998, articles of organization were filed for the business entity RLM Investments, L.L.C. (RLM), with Randy L. Matthews listed as general manager and registered agent. In January 1999, RLM applied to the Edmond Planning Commission for an ordinance rezoning certain property to a commercial planned unit development with usage restricted to a funeral home or mortuary. The plans submitted on behalf of RLM to the Planning Commission indicated the proposed business was "Matthews Funeral Home of Edmond."

¶ 5 Randy Matthews tendered his resignation to LGAC on February 3, 1999. The City Council granted final approval for rezoning for funeral home construction on February 8, 1999. The proposed Matthews Funeral Home was to be located within three miles of the Baggerley Greenlawn Chapel and within 2.5 miles of the Baggerley Chapel. Randy Matthews became the registered general partner of Matthews Funeral Home, L.P. (MFH), when MFH was certified as an Oklahoma Limited Partnership on February 10, 1999.

¶ 6 On March 2, 1999, LGAC filed this lawsuit against Matthews, RLM and MFH.

It sought damages for breach of the non-compete covenant of the employment agreement and injunctive relief to prevent Matthews from starting and operating the competing funeral home.

¶ 7 Claiming the contract provision was void and unenforceable, Matthews filed a motion to dismiss the action for failure to state a claim. The trial court denied that motion.

¶ 8 Thereafter, LGAC filed a motion for a temporary injunction against all Defendants, asserting that their conduct "individually and collectively" was in violation of Randy Matthews' employment contract and would cause it to suffer irreparable harm. It further asserted "[u]pon information and belief" that Matthews "is or may be operating a 'store front' operation pending construction of MFH."

¶ 9 In his answer, Matthews stated that he had tendered his resignation only in response to LGAC's expressed desire to terminate him. He and the other defendants further asserted that the employment agreement sought to be enforced was (1) an illegal restraint of trade in violation of 15 O.S.1991 § 217; (2) void as against public policy; and, (3) illusory and not supported by separate consideration. Defendants also asserted that RLM and MFH had no contractual relation with LGAC and that it could not show any damage from Matthews' pursuit of a legal trade.

¶ 10 Following a hearing, the trial court entered its "Order on Temporary Injunction," wherein it determined that the covenant not to compete was reasonable, both as to time and place. Defendants filed a motion to reconsider, which the trial court denied. The trial court later entered an "Order Settling Journal Entry" wherein it clarified that:

> [T]he Temporary Injunction entered herein enjoins only the Defendant RANDY L. MATTHEWS individually and extends to his participation in any entity that may have as its general purpose conduct that would be considered violative of the Covenant Not To Compete found in the Employment Contract entered into by and

between RANDY L. MATTHEWS and the Plaintiff.

Matthews appeals.[1]

¶ 11 Matthews asserts that the trial court erred in granting the temporary injunction because the non-competition provision contained in his employment agreement is void for unreasonableness under 15 O.S.1991 § 217. He further asserts that LGAC failed to satisfy its burden of proof necessary to demonstrate entitlement to a temporary injunction. On the other hand, LGAC asserts that the employment agreement is enforceable because its terms are reasonable and protect its legitimate business interests.

¶ 12 The issuance of a temporary injunction involves the exercise of the trial court's discretion. *Truttman v. City of McAlester*, 1952 OK 148, 243 P.2d 352; *Smilie v. Taft Stadium Bd. of Control*, 1949 OK 42, 205 P.2d 301. Because injunction is an extraordinary remedy, the power to issue injunctions should be exercised "sparingly and cautiously, and only in cases reasonably free from doubt." *Payne v. Jones*, 1944 OK 86, ¶ ——, 146 P.2d 113, 118.

¶ 13 This court will not disturb an order that grants or refuses an injunction unless there has been an abuse of discretion evidencing a disregard of the facts or the law. However, the question of whether a particular contract provision is void as contrary to public policy is ordinarily a question of law. *Hargrave v. Canadian Valley Elec. Co-op., Inc.*, 1990 OK 43, 792 P.2d 50; *Cohen Realty, Inc. v. Marinick*, 1991 OK CIV APP 71, 817 P.2d 747.

¶ 14 Contracts restraining the free exercise of a profession, trade or business are not favored in the State of Oklahoma. Title 15 O.S.1991 § 217, provides:

> Every contract by which any one is restrained from exercising a lawful profession, trade or business of any kind, otherwise than as provided by Sections 218 and 219 of this title, is to that extent void.[2]

However, the supreme court has determined that only unreasonable restraints are prohibited by section 217 and that reasonable restraints that protect against *unfair* competition will be enforced. *Bayly, Martin & Fay, Inc. v. Pickard*, 1989 OK 122, ¶ 11, 780 P.2d 1168, 1171; *Tatum v. Colonial Life & Accident Ins. Co. of America*, 1970 OK 27, ¶ 8, 465 P.2d 448, 451.

¶ 15 The determination of whether a restraint is reasonable depends on all the facts and circumstances. A restraint is deemed reasonable only if it (1) is no greater than is required for the employer's protection from unfair competition; (2) does not impose undue hardship on the employee; and, (3) is not injurious to the public. *See Tatum*, 1970 OK 27 at ¶ 8, 465 P.2d at 451–52; *see also Bayly*, 1989 OK 122 at ¶ 2, 780 P.2d at 1176 (Opala, V.C.J., and Lavender, J., concurring in part and dissenting in part); Restatement (Second) of Contracts § 188 (1981).

¶ 16 The non-competition provision in this case is part of an employment agreement executed by Matthews near the time LGAC acquired the three Baggerley Chapels from their owner, Dwayne Marler. Matthews testified that, from discussions with Marler regarding dealings with LGAC, he learned Marler's opinion of whether he should sign the agreement: "[I]f I didn't do that, being a manager ... I could possibly not have a job later on." He and Marler; who also continued to work for LGAC after the purchase, both signed the employment agreement after negotiating a reduction of the geographic limitation from fifty to fifteen miles. Matthews did not have the aid of counsel.

¶ 17 LGAC's area manager, who was responsible for day-to-day operations of about thirty different funeral homes owned by LGAC in central, southeast and southwest Oklahoma, also testified at the hearing on the temporary injunction. He stated that LGAC owned a total of eleven funeral homes in the Oklahoma City area and one home in Ed-

---

1. An order granting a temporary injunction is appealable pursuant to 12 O.S. Supp.1999 § 993, and Okla. Sup.Ct. R. 1.60, 12 O.S. Supp.1999, ch. 15, app. 1.

2. The two statutory exceptions to this rule are (1) section 218—sale of the good will of a business; and, (2) section 219—dissolution of a partnership.

mond. He provided this explanation as to why LGAC included the non-competition provision in Matthews' employment agreement:

> Primarily, our business like many others is not simply made up of brick and mortar, it's primarily people. In our business people call who they know. Mr. Matthews is a good funeral director, and we saw a lot of value in his employment with us. He has a lot of experience in funeral service and *he knows the community very well.* He has a specific following that people—so that he provides certain services to people and our company saw that as a value.

I have a contract very similar to this one, although not in Oklahoma City *because no one here knows me,* but in Southeast Oklahoma in my town I have a contract very similar to this one that says very much the same thing. (Emphasis added.) [3]

¶ 18 From the record presented, it seems clear that the non-competition provision involves a much broader restriction with regard to geographical area than is necessary to protect the interests LGAC maintains the employment agreement serves to protect. Matthews had been living in Edmond since 1977. He graduated from University of Central Oklahoma in Edmond in 1981 and was licensed by the State in that year. He had been working at the Edmond Baggerley Funeral Home for more than ten years when it was purchased by LGAC. There is no evidence that Matthews had ties with the Oklahoma City community or had established any "following" there. However, the fifteen-mile radius from any existing chapel encompasses nearly all of Oklahoma City. We also note that the time period of the restriction, three years, is one year longer than that approved by the court in *Tatum.* The time period during which the defendant in *Key Temporary Personnel, Inc. v. Cox,* 1994 OK CIV APP 123, ¶ 4, 884 P.2d 1213, 1214, was prohibited from soliciting or diverting any client of the former employer was only nine months.

¶ 19 Although we find that certain aspects of the agreement are not reasonable, we also find this non-competition provision to be more fundamentally flawed. Its purpose seems to be to protect LGAC from *any* competition, rather than the *unfair* competition for which *Tatum* allows contractual protection. The agreement does far more than impose a "hands-off" policy as to Baggerley clients or prevent Matthews' disclosure of business practices or trade secrets. It completely restrains Matthews from exercising his profession within the Oklahoma City metro area for a period of three years. In *Tatum,*[4] the court found that to be a crucial distinction and explained:

> Clearly, this contractual provision is not intended to preclude the defendant from selling, or attempting to sell, any other form of insurance to those insureds, or to preclude him from selling or attempting to sell, any form of insurance (including health and/or accident insurance) to any one else. Just as clearly, it is not intended to protect the plaintiff company against fair competition in the insurance field involved, but is intended to protect the plaintiff company against unfair competition in that field, on the part of its former soliciting agents, particularly that which would result from the former agent's use of information concerning the company's group, and franchise, health and/or accident policies and those insured thereunder, furnished by the company to him as its soliciting agent, or acquired by him through his activities as such a soliciting agent.

1970 OK 27 at ¶ 8, 465 P.2d at 451.

¶ 20 Plaintiff maintains that non-competition contracts are not limited only to "hands-off" agreements—those intended to

---

3. The area manager further testified that the non-compete area in his contract was "defined within the county." He explained that LGAC had contracts with a geographic radius of fifty miles, but they were used more often in rural areas where there was a larger trade territory.

4. In *Tatum,* the insurer sought an injunction against its soliciting agent for a period of two years after termination of agreement between the parties to prevent him from selling or attempting to sell accident or health insurance to any of insurer's insureds under group policies or franchise policyholders and from inducing or attempting to induce any of the insureds to cancel, lapse or fail to renew their policies.

prevent an ex-employee from soliciting the employer's own customers. We agree but only to an extent. We find a fundamental tenet of *Tatum* to be that an employer may only contractually protect itself from unfair competition and not from the ordinary fair competition that section 217 is intended to foster. *Tatum* makes it clear that a covenant not to compete is unreasonable and does not protect a legitimate interest of an employer if its object is revealed to be prevention of ordinary competition. *See also Cohen Realty, Inc. v. Marinick*, 1991 OK CIV APP 71, 817 P.2d 747.

¶ 21 We think the law is clear that an employer may contract with its employees to impose reasonable limitations on an employee's post-employment competition, which is made possible by the expertise, contacts, good will and opportunity *that had been gained directly from the employment with employer*. However, our close analysis of *Tatum* and other case authority convinces us that an agreement that prevents competition from an employee who has not gained some competitive advantage or opportunity from the employment is inherently unfair. And we conclude that any agreement that seeks to prohibit fair competition can never be reasonable.

¶ 22 In this instance, the evidence unequivocally demonstrates that the non-competition agreement was not intended to prevent Matthews from competing unfairly—from improperly using some business advantage or opportunity gained through his LGAC employment. Specifically, it was intended to prevent him from using in competition with LGAC the considerable experience, contacts and recognition within the Edmond community *that he already had gained before LGAC's purchase of the Baggerly Funeral Home*. When questioned regarding the impact that the building of the MFH would be on the Baggerley Funeral Homes, the area manager stated:

> [C]ompetition is not a new thing to us, certainly, we compete in a lot of different markets. But typically in a, in a market where the competitor has ... experience in funeral service and is well-known in the community like Mr. Matthews is, I would

expect in the first year 20 to 30 percent of the business would be lost almost immediately.

¶ 23 We reiterate that the evidence demonstrates that Matthews' experience in funeral service and recognition in the community were not gained through LGAC's employment of him.

Illustrative of what LGAC actually desired is the statement of its counsel in closing argument:

> I think that the issue of irreparable harm is made clear by the fact that we have a rezoning, in other words, a funeral home wasn't going to be built there until Mr. Matthews commenced his planning, [and] every step that is taken toward the completion of a funeral home ... is a step toward someone coming in and competing, notwithstanding the fact that Mr. Matthews may ultimately be subject to damages in this case. There is nothing that ... would prevent someone else coming in and taking over that funeral home....

¶ 24 Based on the foregoing analysis, we find that the covenant not to compete in the employment agreement is an unreasonable restraint on trade prohibited by section 217. We will not engage in judicial modification of the unenforceable provision because the fundamentally flawed nature of the agreement would require "material judicial alteration and the provision of essential terms in order to come within the rule of reason." *Bayly*, 1989 OK 122 at ¶ 21, 780 P.2d at 1175.

¶ 25 We conclude that the trial court erred in granting the temporary injunction to enforce the employment agreement. LGAC was not entitled to injunctive relief. Accordingly, we vacate the trial court's order granting the temporary injunction and remand the cause with instructions to dismiss.

¶ 26 VACATED AND REMANDED WITH INSTRUCTIONS TO DISMISS.

GOODMAN, C.J., Presiding, and REIF, J., concur.