2002 OK 27

**CARDIOVASCULAR SURGICAL SPECIALISTS, CORPORATION,**
Appellee,

v.

**Robert B. MAMMANA, M.D., Appellant.**

No. 95738.

Supreme Court of Oklahoma.

April 9, 2002.

Rehearing Denied Jan. 7, 2003.

Reuben Davis, Gerald Hilsher, David J. Hyman, Boone, Smith, Davis, Hurst & Dickman, Tulsa, OK, for Appellant.

Brian J. Rayment, Kivell, Rayment, Francis, Coulson & Heath, Tulsa, OK, for Appellee.

HODGES, J.

¶ 1 This matter was retained by this Court for resolution of the following issues: 1) Is this appeal moot? 2) Is the decision of the arbitration panel subject to judicial review? 3) Does the "non-compete" provision in the former employee's employment contract constitute an unlawful restraint of trade in violation of title 15, section 217, of the Oklahoma Statutes? This Court holds that the appeal is not moot, that the decision of the arbitration panel is subject to judicial review, and that the "non-compete" provision in the employment contract constitutes an unlawful restraint of a trade or business and is thus, void and unenforceable.

¶ 2 This dispute involves a "non-compete" provision in an employment contract between a cardiovascular surgeon and his employer, another cardiovascular surgeon. Dr. Cohlmia is a cardiovascular and thoracic surgeon in Tulsa, Oklahoma. His practice is operated through an Oklahoma corporation, Cardiovascular Surgical Specialists, Corporation (CSS), Appellee, of which he is President and sole shareholder.

¶ 3 In 1996, Dr. Cohlmia sought an associate. On November 15, 1996, he entered into an employment contract with Robert B. Mammana, M.D., a 53 year-old cardiovascular and thoracic surgeon with an established

practice in Tuscon, Arizona and over twenty years experience in his specialty. As with any practice of cardiovascular and thoracic surgery, Drs. Cholmia and Mammana were, and are, particularly dependent on referrals from other physicians in the medical community. Patients normally seek treatment from a less specialized medical practitioner who then refers the patient for possible surgery.

¶ 4 Dr. Mammana's employment contract contained a "non-compete" provision which was to become the subject of this litigation. It provided that within two years following his employment with CSS, Dr. Mammana would not practice cardiovascular and thoracic surgery within a twenty mile radius of CSS offices. In addition, for nine months following his employment he was not to "solicit, divert or accept referrals" from any source of CSS referrals. Finally, Dr. Mammana was prohibited, within one year of his employment, from soliciting or diverting the business of any CSS patients, provided however, that any patient "who affirmatively requests" could continue to see Dr. Mammana.

¶ 5 From early 1997 until July 31, 1999, Dr. Mammana practiced cardiovascular and thoracic surgery as an employee of CSS at hospitals in Tulsa. After Dr. Mammana's departure from CSS, he continued to practice cardiovascular and thoracic surgery as a sole practitioner.

¶ 6 CSS filed a petition in the District Court of Tulsa County asserting breach of the "non-compete" provision and asking for injunctive relief. That petition was dismissed and the matter was referred to arbitration pursuant to a provision of the employment contract. The arbitration panel ultimately determined that the "non-compete" provision was enforceable and that CSS was therefore entitled to injunctive relief. The issue of damages was reserved for future proceedings. CSS then sought to confirm the arbitration award and to obtain injunctive relief from the District Court of Tulsa County.

¶ 7 After a hearing, the District Court confirmed the decision of the arbitration panel and enjoined Dr. Mammana from practicing cardiovascular and thoracic surgery within a twenty mile radius of one of CSS's offices. The court denied Dr. Mammana's motion to vacate the award. This appeal resulted.

¶ 8 The injunction expired on July 31, 2001, during the briefing cycle of this appeal. Drs. Cohlmia and Mammana continue to maintain separate cardiovascular and thoracic surgery practices in Tulsa.

## I. This Appeal Is Not Moot

¶ 9 CSS argues that because the injunction enforcing the "non-compete" provision expired by its own terms on July 31, 2001, this appeal is now moot. However, CSS's claim for damages for breach of the provision remains pending before the arbitration panel. A determination of whether the "non-compete" provision is enforceable is central to the resolution of that claim. Thus, the appeal is not rendered moot by the expiration of the injunction. "Where issues remain to be resolved, for instance, where a party is still potentially liable, the granting of injunctive relief and a review thereof are not moot." *Key Temp. Personnel, Inc. v. Cox*, 884 P.2d 1213, 1214 (Okla.Ct.Civ.App.1994) (citations omitted).

## II. The Decision Of The Arbitration Panel Is Subject To Judicial Review

¶ 10 CSS also asserts that the decision of the arbitration panel is not subject to judicial review because it does not fit into one of the enumerated grounds for vacation found in title 15, section 812(A) of the Oklahoma Statutes.[1] Dr. Mammana argues that

1. The grounds for vacating an arbitration award are:

    A. Upon application of a party, the court shall vacate an award if:

    1. The award was procured by corruption, fraud or other illegal means;

    2. There was evident partiality by an arbitrator appointed as a neutral or corruption in any

of the arbitrators or misconduct prejudicing the rights of any party;

    3. The arbitrators exceeded their powers;

    4. The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the requirements of

the decision is subject to vacation under section 812(A)(3) because the panel "exceeded its powers" by upholding a "non-compete" provision which is void under Oklahoma law. He points to the parties' contract which provides that Oklahoma law would control. The controlling authority on this issue, however, is found in *Wyatt–Doyle & Butler Eng'g v. City of Eufaula*, 2000 Ok 74, 13 P.3d 474.

¶ 11 In *Wyatt–Doyle*, this Court held "the fact that an arbitrator reviewed the contract of the parties still does not prevent this Court from reviewing the contract's validity." *Id.* at 477. While that decision concerned a contract provision which violated this state's constitutional limitation on municipal debt, the same reasoning applies to a contract provision which is void by statute.

¶ 12 Like the debt limitation found in the Oklahoma Constitution, the prohibition on unlawful restraints of trade, found at title 15, section 217, was enacted to protect the people. *Neil v. Pennsylvania Life Ins. Co.*, 474 P.2d 961, 963 (Okla.1970) ("Undoubtedly this section of the statute was adopted for the protection of individuals engaged in lawful professions, trades, and business, and for the benefit of the public.") It provides that "[e]very contract by which one is restrained from exercising a lawful profession, trade or business of any kind, otherwise than as provided by section 218 and 219 of this title, is to that extent void." [2]

¶ 13 As in *Wyatt–Doyle*, this public right cannot be waived by the parties' agreement to submit the issue of the validity of a contract provision to arbitration. A void provision provides no legal basis for enforcement whether through arbitration or judicial pronouncement.

### III. The "Non–Compete" Provision Violates Section 217

¶ 14 "Section 217 prohibits only *unreasonable* constraints on the exercise of a

lawful profession, trade, or business." *Bayly, Martin & Fay, Inc. v. Pickard*, 780 P.2d 1168, 1172 (Okla.1989) (emphasis added). Further, only "unfair competition" on the part of a former employee is the legitimate focus of a covenant not to compete. *See Tatum v. Colonial Life & Accident Ins. Co.*, 465 P.2d 448, 451 (Okla.1970). Thus, provisions which require the former employee to "maintain a 'hands-off' policy" as to the employer's customers have been upheld. *See id; Key Temp.*, 884 P.2d 1213. However, provisions by which an employer sought to go beyond a prohibition on active solicitation and thus prevent fair competition have been declared void. *See Bayly*, 780 P.2d at 1175 ("Where no active solicitation has occurred, restraint on an insurance agent's dealings with former clients is unenforceable."); *Loewen Group Acquisition Corp. v. Matthews*, 2000 OK CIV APP 109, 12 P.3d 977, 982 (certiorari denied) ("[A]n employer may only contractually protect itself from unfair competition and not from the ordinary fair competition that section 217 is intended to foster"). Competition becomes unfair when a former employee "improperly us[es] some business advantage or opportunity gained through ... employment." *Loewen Group*, 12 P.3d at 982. To cure an overly broad and thus unreasonable restraint of trade, an Oklahoma court may impose "reasonable limitations concerning the activities embraced, time, or geographical limitation" but it will refuse to supply material terms of a contract. *Bayly*, 780 P.2d at 1173 & 1175.

¶ 15 The "non-compete" provision of Dr. Mammana's employment contract with CSS provided:

17. *Non-compete:* During the term of the Agreement, and for two years thereafter, Dr. Mammana agrees that he will not, for himself or on behalf of any other per-

---

this act, as to prejudice substantially the rights of a party; or

5. There was no arbitration agreement and the issue was not adversely determined in proceedings under Section 3 of this act and the party did not participate in the arbitration hearing without raising the objection.

Okla. Stat. tit. 15, § 812(A) (1991) (footnote omitted).

**2.** Sections 218 and 219 contain the two exceptions to the restraint of trade prohibition. This matter, however, involves neither a sale of the goodwill of a business, section 218, nor the dissolution of a partnership, section 219.

son, persons, partnership, corporation, or other entity, within a twenty mile radius of Cardiovascular's offices:

   A.  own, operate, or in any way participate in the practice of cardiovascular or thoracic surgery,

   B.  solicit, divert or accept referrals from any source of Cardiovascular referrals within nine months of the date of termination,

   C.  solicit or divert business of any patient who had been a patient of Cardiovascular within one year of the termination,

without Cardiovascular's advanced written consent. Notwithstanding the foregoing, Dr. Mammana may, following his termination, accept as a patient anyone for whom Dr. Mammana provided medical services during his employment at Cardiovascular and who affirmatively requests that Dr. Mammana, rather than Cardiovascular, continue to provide medical services.

Testimony before the arbitration panel revealed that the closest hospitals outside the twenty mile radius mentioned in section A of the provision are in Oklahoma City, Fort Smith, Joplin, and Wichita. Therefore, Dr. Mammana was effectively barred from practicing cardiovascular and thoracic surgery within 100 miles of the City of Tulsa. In addition, the prohibition was in effect for two years following his employment with CSS.

¶ 16 Section A is much broader than necessary to protect any legitimate interest of CSS. It is revealing that when asked whether Dr. Mammana could abide by the provision for two years and maintain his practice, Dr. Cohlmia responded: "It would be unlikely that if the non-compete was abided by, that someone would stay in the community for two years, not practice, and then have a viable practice at the end of two years." CSS's assertion that Dr. Mammana could merely switch from cardiovascular and thoracic surgery to another medical specialty such as dentistry or psychiatry for two years does not persuade this Court that the provision constituted a reasonable restraint on Dr. Mammana's chosen profession.

¶ 17 Similarly section B goes far beyond the reasonable prevention of unfair competition. It is aimed not at CSS patients, but at physicians who have referred patients to either Dr. Mammana or Dr. Cohlmia during Dr. Mammana's employment with CSS and who might choose to refer a patient to Dr. Mammana during the two years following that employment. It seeks a monopoly with respect to past, present, and future referral sources of Dr. Cohlmia.

¶ 18 Ordinary competition for patients is something CSS cannot avoid through a "non-compete" provision. Evidence presented to the arbitration panel demonstrated the personal nature of reputation-dependent referrals to cardiovascular surgeons.[3] One surgeon has no legitimate business interest in another surgeon's referral base regardless of a past employer-employee relationship.

¶ 19 The only permissible restriction to be found in the "non-compete" provision is contained in section C. That section prohibits Dr. Mammana from active solicitation of CSS *patients* within one year following his employment. It excepts those instances in which a patient "affirmatively requests that Dr. Mammana, rather than Cardiovascular, continue to provide medical services."[4] Such a prohibition is consistent with other non-competition agreements which have been upheld on appeal. *See Tatum* 465 P.2d at 451; *Key Temp.*, 884 P.2d at 1216.[5]

---

3. Doctors refer patients to surgeons for cardiovascular surgery, not to corporations. Thus, referrals made to Dr. Mammana were based on factors other than his status as an employee of CSS or his later status as an independent practitioner.

4. There is no indication in the record that any solicitation or diversion of patients has occurred.

5. The prohibition is also consistent with the Legislature's recent enactment concerning noncompetition agreements. Effective June 4, 2001, title 15, section 219A gives effect to such agreements provided that the employee "shall be permitted to engage in the same business as that conducted by the former employer or in a similar business ... as long as the former employee does not directly solicit the sale of goods, services or a combination ... from the established customers of the former employer." 2001 Okla. Sess. Laws ch. 406 § 4.

¶ 20 This Court holds that sections A and B of the "non-compete" provision violate section 217 and are therefore void and unenforceable. For that reason, this Court modifies the agreement, without supplying any material terms, by striking the two offending sections. The matter is remanded to the trial court to determine whether the issue of breach and damages concerning section C should be submitted to arbitration.

TRIAL COURT REVERSED; CAUSE REMANDED WITH DIRECTIONS.

¶ 21 WATT, V.C.J., HODGES, LAVENDER, KAUGER, SUMMERS, BOUDREAU, JJ., concur.

¶ 22 HARGRAVE, C.J., concurs in result.

¶ 23 OPALA, WINCHESTER, JJ., dissent.