2011 OK 98

**Eddie Lee HOWARD and Shane D. Schneider, Plaintiffs/Appellants,**

v.

**NITRO–LIFT TECHNOLOGIES, L.L.C., Defendant/Appellee.**

No. 109,003.

Supreme Court of Oklahoma.

Nov. 22, 2011.

Rehearing Denied Feb. 13, 2012.

Micah Knight, Durant, Oklahoma, for Plaintiffs/Appellants.

Kelli M. Masters, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, Oklahoma, for Defendant/Appellee.

WATT, J.

¶1 Three issues[1] must be addressed to resolve this cause. They are whether: 1) the validity of the covenants not to compete should be resolved by the arbitrator or this Court; 2) the underlying covenant is void as

---

1. The cause was retained to determine whether Oklahoma's public policy prohibited enforcement of an employment agreement providing that arbitration should take place in another jurisdiction with the application of yet a different state's law. Nevertheless, the cause's resolution on other grounds would render any statement on the issue an advisory opinion. See, *Ball v. Wilshire Ins. Co.*, 2007 OK 80, fn. 3, 184 P.3d 463; *Scott v. Peterson*, 2005 OK 84, ¶27, 126 P.3d 1232; *City of Midwest City v. House of Realty, Inc.*, 2004 OK 56, fn. 14, 100 P.3d 678. All issues addressed herein are fairly comprised within the petition for declaratory judgment and injunctive relief filed in the district court on October 14, 2010 and within the Motion of Appellants that Appeal be Retained for Disposition by Supreme Court filed on December 14, 2010. *Burrell v. Burrell*, 2007 OK 47, fn. 10, 192 P.3d 286 [An argument need not be artfully drawn as long as it is fairly comprised within the pleadings presented to the trial court.] Furthermore, the parties were given the opportunity to address the effect of 15 O.S. 2001 § 219A, see note 2, infra, on the non-

competition provision by this Court's order of October 18, 2011. We note that in *Bakhsh v. JACRRC Enterprises, Inc.*, 1995 OK CIV APP 40, ¶9, 895 P.2d 746, the Court of Civil Appeals determined that a forum selection clause may be so unreasonable that it will be gravely difficult and inconvenient resulting in a party being deprived of a day in court. If so, it could be declared unenforceable. For the same proposition, see, *M/S Bremen v. Zapata Off-Shore, Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). See generally, M. Rosenhouse, J.D., "Validity and Effect of Stipulation in Contract to Effect that It Shall Be Governed by Law of Particular State which is neither Place where Contract Is Made nor Place Where It Is To Be Performed," 16 A.L.R.4th 967 (1982); F. Dougherty, J.D., "Validity of Contractual Provision Limiting Place or Court in which Action May Be Brought," 31 A.L.R.4th 404 (1984); and W. Heiser, "Forum Selection Clauses in State Courts: Limitations on Enforcement after Stewart and Carnival Cruise," 45 Fla.L.Rev. 361 (1993).

against public policy pursuant to 15 O.S.2001 § 219A;[2] and 3) if so, can it be modified judicially to conform with the controlling statutory provision.[3]

¶ 2 We determine that the existence of an arbitration agreement in an employment contract does not prohibit judicial review of the underlying agreement. Our determination is supported by our prior jurisprudential pronouncements in: *Wyatt–Doyle & Butler Engineers, Inc. v. City of Eufaula*, 2000 OK 74, 13 P.3d 474; *Cardiovascular Surgical Specialists, Corp. v. Mammana*, 2002 OK 27, 61 P.3d 210; *Thompson v. Bar–S Foods Co.*, 2007 OK 75, 174 P.3d 567; and *Bruner v. Timberlane Manor Ltd. Partnership*, 2006 OK 90, 155 P.3d 16.

¶ 3 As drafted, we hold that the non-competition covenants are void and unenforceable as against Oklahoma's public policy expressed by the Legislature's enactment of 15 O.S.2001 § 219A.[4] They contain provisions, for the period of two years, prohibiting: 1) employment with any oil or gas entity located in the United States and generating five percent (5%) of its gross revenues from nitrogen generation; 2) solicitation of any past or present Nitro–Lift customer or supplier; and 3) employing or soliciting employment of any Nitro–Lift officer or employee. Finally, we determine that judicial modification of the contractual provisions is inappropriate where, as here, the contractual provisions would have to be substantially rewritten to cure multiple defects.[5]

2. Title 15 O.S.2001 § 219A providing:

"A. A person who makes an agreement with an employer, whether in writing or verbally, not to compete with the employer after the employment relationship has been terminated, shall be permitted to engage in the same business as that conducted by the former employer or in a similar business as that conducted by the former employer as long as the former employee does not directly solicit the sale of goods, services or a combination of goods and services from the established customers of the former employer.

B. Any provision in a contract between an employer and an employee in conflict with the provisions of this section shall be void and unenforceable."

3. *Id.* Prior to today's opinion, there have been only two non-precedential, distinguishable pronouncements on 15 O.S.2001 § 219A, see note 2, infra. The first came from the United States District Court in *Eakle v. Grinnell Corp.*, 272 F.Supp.2d 1304 (E.D.Okla.2003). While the federal court refused to apply § 219A retroactively, its assessment of the effect of the statute is consistent with our ruling today. The opinion provides in pertinent part:

"... Initially, it is argued by Eakle that the NCA violates section 219A because of its duration, geographic restriction, and overall comprehensive nature of the prohibited activities. Eakle accurately points out that section 219A permits employees to enter into non-compete agreements with employers, but only to the extent 'the former employee does not directly solicit the sale of goods, services or a combination of goods and services from the established customers of the former employer.' 15 O.S. § 219A (A). Otherwise, the employee is 'permitted to engage in the same business as that conducted by the former employer or in a similar business as that conducted by the former employer.' *Id.* Admittedly, the NCA goes beyond section 219 A(A)'s specific prohibition against the active solicitation of established customers by, among other things, precluding Eakle from owning, operating, or being employed by any similar business in competition with Grinnell...."

*Inergy Propane, LLC v. Lundy*, 2009 OK CIV APP 8, 219 P.3d 547 involved a covenant not to compete executed in association with a sale of goodwill, a situation not presented here. In consideration for employment, Lundy signed a confidentiality and non-solicitation agreement protecting Inergy's customer information and lists, pricing, business strategies, and trade secrets. It also prohibited Lundy, for one year, from soliciting the hiring of Inergy employees, and, for two years, soliciting or diverting customers within fifty (50) miles of the company's business locations where Lundy had worked. The COCA determined, at least in some instances, the rule of reason would be applicable even under the confines of 15 O.S.2001 § 219A. It held that the statute addressed the balance of competitive effects under a rule of reason analysis finding the non-solicitation agreement enforceable. Pronouncement by an inferior federal court, although not binding of this Court, may have persuasive value. See, *Boswell v. Schultz*, 2007 OK 94, ¶ 15, 175 P.3d 390; *Mehdipour v. State ex rel. Dept. of Corrections*, 2004 OK 19, ¶ 18, 90 P.3d 546. Opinions released for publication by order of the Court of Civil Appeals are persuasive only and lack precedential effect. Rule 1.200, Supreme Court Rules, 12 O.S.2001, Ch. 15, App. 1; 20 O.S. 2001 §§ 30.5 and 30.14.

4. Title 15 O.S.2001 § 219A, see note 2, supra.

5. In reaching our decision today, we consider extant federal and state precedent. Nevertheless, our determinations rest squarely within Oklahoma law which provides bona fide, separate, adequate, and independent grounds for our

## FACTS

¶ 4 Howard was hired by Nitro–Lift initially on August 18, 2008 at its offices in Tishomingo. At that time, Howard had approximately twenty (20) years' experience in the oil and gas industry. Due to a dispute over hours worked, compensation paid, and time off, Howard quit in November of 2009. Approximately a month later, Nitro–Lift rehired him. Based on similar concerns to those he had in 2009, Howard again resigned in April of 2010.

¶ 5 In July of 2009, Nitro–Lift hired Schneider at its office in Tishomingo. The employee had prior experience in the oil field with Halliburton. Harboring complaints similar to those of Howard, Schneider quit on June 11, 2010.

¶ 6 Both employees signed confidentiality/non-compete agreements with Nitro–Lift at their hiring.[6] The agreements provide that neither employee, for a period of two (2) years following separation, will: be employed by any business involved in nitrogen generation [7] in the United States; solicit any past or present customer or supplier of the employer; or engage, employ, solicit, or contact any Nitro–Lift officer or employee for the purpose of recruiting the officer or employee for employment. They also bar the employees from loaning money to a business engaging in nitrogen generation and selling or leasing equipment to any person or company of like kind.

¶ 7 After July 8, 2010, Nitro–Lift served the employees with a demand for arbitration alleging that the employees had breached the non-compete agreement and should be ordered to refrain: a) from disclosing or using Nitro–Lift's confidential information; b) from inducing its employees to leave their employment with the company; and c) from competing or interfering with the employer's business relationships or soliciting its customers.[8] The agreement calls for the application of Louisiana law in an arbitration proceeding to

decision. *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

6. Although an employment agreement had been executed when he was originally hired, Howard alleges that no agreement was signed when he went back to work.

7. The Confidentiality/Non–Compete agreement defines "nitrogen generation" as:

"... the use of non-cryogenically generated nitrogen for applications on wellsites in the oil and gas industry in the United States ..."

8. The confidentiality/non-compete agreements provide in pertinent part:

"... k) In consideration of the receipt of Confidential Information during employment, the receipt of compensation, each element of compensation being hereby acknowledged by Employee as adequate, Employee hereby covenants and agrees that for two years from the date of separation from employment with Nitro–Lift, regardless of the reason or cause for separation, he will not directly or indirectly; [sic]
i) own, manage, operate, join, control or participate in or be connected with (whether as a director, officer, employee, agent, representative, partner, consultant or otherwise), or loan money to or sell or lease equipment to, any business or Person, which wholly or in any significant part, engages in Nitrogen Genera-

tion (as defined below) (a 'Competing Business') ... The phrase 'Nitrogen Generation' means the use of non-cryogenically generated nitrogen for applications on wellsites [sic] in the oil and gas industry in the United States; ii) for purposes related to any Competing Business or about whom Employee has Confidential Information, canvass, solicit, approach or entice away or cause to be canvassed, solicited, approached or enticed away from Nitro–Lift or its Affiliates any Person who or which is a past or present customer or supplier of Nitro–Lift or any of its Affiliates, or cause any such Person to curtail or cancel its business with Nitro–Lift or its Affiliates; or iii) engage or employ, or solicit or contact with a view to the engagement or employment of any Person who is an officer or employee of Nitro–Lift or any of its Affiliates, or induce or attempt to influence any such Person to terminate his or her employment.
The parties agree and acknowledge that the limitations as to time, geographical area and scope of activity to be restrained as set forth in Section 4(k) are reasonable and do not impose any greater restraint than is necessary to protect the legitimate business interests of Nitro–Lift. To the extent that any part of this Section 4(k) may be invalid, illegal or unenforceable for any reason, it is intended that such part shall be enforceable to the extent that a court of competent jurisdiction shall determine that such part, if more limited in scope, would have been enforceable, and such part shall be deemed to have been so written and

be conducted in Houston, Texas.[9]

¶ 8 The instant cause arises out of the employee's petition for declaratory judgment and injunctive relief filed in the District Court of Johnston County on October 14, 2010. The employees sought judgment declaring the non-compete agreement null and void and enjoining enforcement of the same. The district court granted the employees a temporary restraining order pending a hearing. On November 9, 2010, Nitro–Lift filed a motion to dismiss. The cause was heard on November 23, 2010. An order issued that same day in which the district court found the arbitration agreement to be valid on its face and reasonable in its terms and scope. Nitro–Lift's motion to dismiss was granted. The district court denied the employees' motion for a stay pending appeal filed on December 2, 2010. We also declined to issue a stay. However, we granted the employees' motion to retain the cause on January 19, 2011.

¶ 9 On October 18, 2011, we issued a show cause order directing the parties to address the effect of 15 O.S.2001 § 219A on the cause. Briefs were filed on October 28th and October 31st by the employees and the employer, respectively.

### Standard of Review[10]

¶ 10 In Oklahoma, the rules governing appellate review in regard to injunctive relief are settled. Matters involving the granting or denying of injunctive relief are of equitable concern.[11] A judgment issuing or refusing to issue an injunction will not be disturbed on appeal unless the lower court has abused its discretion or the decision is clearly against the weight of the evidence.[12] An abuse of discretion occurs when a decision is based on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling.[13] Nevertheless, this Court is not bound by the findings or reasoning of the lower court. Rather, we independently consider, weigh, and examine the evidence.[14]

¶ 11 We remain mindful that injunctions are extraordinary remedies that should not be lightly granted.[15] Entitlement to injunctive relief must be established by clear and convincing evidence and the nature of the complained of injury must not be nominal, theoretical, or speculative.[16] Never-

---

the remaining parts shall as written be effective and enforceable in all events."

9. The confidentiality/non-compete agreements provide in pertinent part:
"... ARBITRATION
a) Any dispute, difference or unresolved question between Nitro–Lift and the Employee (collectively, the 'Disputing Parties') shall be settled by arbitration by a single arbitrator mutually agreeable to the Disputing Parties in an arbitration proceeding conducted in Houston, Texas ...
CONSTRUCTION
THIS AGREEMENT SHALL, IN ALL RESPECTS, BE SUBJECT TO AND BE INTERPRETED, CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS IN EFFECT IN THE STATE OF LOUISIANA, WITHOUT REGARD TO ITS CONFLICT OF LAWS PRINCIPLES...." [Emphasis in original.]

10. No one alleges that the contractual language is ambiguous. Therefore, it is subject to interpretation as a matter of law. *Pitco Prod. Co. v. Chaparral Energy, Inc.*, 2003 OK 5, ¶ 12, 63 P.3d 541; *Mercury Inv. Co. v. F.W. Woolworth Co.*, 1985 OK 38, ¶ 9, 706 P.2d 523; *Walker v. Telex Corp.*, 1978 OK 13, ¶ 7, 583 P.2d 482.

11. *Sharp v. 251st Street Landfill, Inc.*, 1996 OK 109, ¶ 5, 925 P.2d 546; *Jackson v. Williams*, 1985 OK 103, ¶ 9, 714 P.2d 1017.

12. *Brown v. Oklahoma Secondary School Activities*, 2005 OK 88, ¶ 11, 125 P.3d 1219; *Johnson v. Ward*, 1975 OK 129, ¶ 42, 541 P.2d 182; *Bartlesville v. Ambler*, 1971 OK 154, ¶ 24, 499 P.2d 433.

13. *Matter of BTW*, 2008 OK 80, ¶ 20, 195 P.3d 896; *Spencer v. Oklahoma Gas & Elec. Co.*, 2007 OK 76, ¶ 13, 171 P.3d 890; *Fent v. Oklahoma Natural Gas Co.*, 2001 OK 35, ¶ 12, 27 P.3d 477.

14. *Sharp v. 251st Street Landfill, Inc.*, see note 11, supra; *Jackson v. Williams*, see note 11, supra; *Public Serv. Co. of Oklahoma v. Home Builders Ass'n of Realtors, Inc.*, 1976 OK 120, ¶ 5, 554 P.2d 1181.

15. *Sharp v. 251st St. Landfill, Inc.*, see note 11, supra; *Jackson v. Williams*, see note 11, supra; *Amoco Prod. Co. v. Lindley*, 1980 OK 6, ¶ 50, 609 P.2d 733.

16. *Daffin v. State ex rel. Oklahoma Dept. of Mines*, 2011 OK 22, ¶ 7, 251 P.3d 741; *House of Realty v. City of Midwest City*, 2004 OK 97, 109 P.3d 314 citing *Sharp v. 251st St. Landfill, Inc.*, see note 11, supra.

theless, the question of the existence of a viable, enforceable agreement to arbitrate is a question of law which this Court reviews *de novo*.[17]

**¶ 12 a) Oklahoma case law supports a determination that the existence of an arbitration agreement in an employment contract does not prohibit judicial review of the underlying agreement.**

¶ 13 Nitro–Lift argues that the issue of the validity of the covenants not to compete is for the arbitrator. In doing so, the employers rely upon United States Supreme Court jurisprudence. The employees assert that jurisdiction lies in this Court based on our pronouncements addressing the issue. We agree with the employees.

¶ 14 Our jurisprudence controls this issue.[18] *Wyatt–Doyle & Butler Engineers, Inc. v. City of Eufaula*, 2000 OK 74, 13 P.3d 474 held that the Uniform Arbitration Act, 12 O.S. Supp.2006 § 1851, *et seq.*[19] **did not prohibit this Court from reviewing a contract submitted to arbitration where one party asserted that the underlying agreement was void and unenforceable.** In *Cardiovascular Surgical Specialists, Corp. v. Mammana*, 2002 OK 27, 61 P.3d 210, we

relied on *Wyatt–Doyle* in determining that **an arbitrator's review of a contract would not prevent this Court from considering the contract's validity. Furthermore, we re-emphasized a principle first enunciated in *Wyatt–Doyle*, that the public right to be free from restraint of trade "cannot be waived by the parties' agreement to submit the issue of the validity of a contract provision to arbitration. A void provision provides no legal basis for enforcement whether through arbitration or judicial pronouncement." We reviewed an underlying employment contract in *Thompson v. Bar–S Foods Co.*, 2007 OK 75, 174 P.3d 567 and held that no arbitration was required where the agreement was not based on a valid contract.**

¶ 15 Most instructive on Nitro–Lift's arguments is *Bruner v. Timberlane Manor Ltd. Partnership*, 2006 OK 90, 155 P.3d 16. *Bruner* contains an exhaustive overview of the United States Supreme Court decisions construing the Federal Arbitration Act (Federal Act), 9 U.S.C. §§ 1, *et seq.* and state arbitration law.[20] The **Supreme Court decisions** discussed therein, and relied upon by Nitro–Lift here, **were found not to inhibit our review of the underlying contract's validity.**[21]

---

**17.** *Oklahoma Oncology & Hematology v. U.S. Oncology, Inc.*, see note 22, infra; *Rogers v. Dell Computer Corp.*, see note 22, infra.

**18.** *Oliver v. Omnicare, Inc.*, see note 22, infra.

**19.** The Oklahoma Uniform Arbitration Act, codified at 15 O.S.2001 §§ 801, *et seq.*, was recodified at 12 O.S. Supp.2006, §§ 1851, *et seq.*, effective January 1, 2006. 2005 Okla. Sess. Laws, ch. 364.

**20.** Among the cases discussed are three Supreme Court cases on which the employers rely: *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006); and *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). *Prima Paint* held that a federal court was free to decide issues relating to the making and performance of an arbitration agreement, but matters concerning the making of the contract containing the arbitration agreement were for the arbitrator. *Buckeye* reaffirmed these principals. *Southland* held that the Federal Act withdrew from the states the power to require a judicial forum for

the resolution of disputes which the contracting parties agreed to resolve by arbitration.

**21.** We acknowledged in *Bruner v. Timberlane Manor Ltd. Partnership*, 2006 OK 90, 155 P.3d 16, that the United States Supreme Court had determined that the Federal Arbitration Act preempted and displaced state anti-arbitration statutes. Nevertheless, relying on the well established principle in Oklahoma law that where two statutes address the same subject, one specific and one general, the specific will govern over the general, we held that the specific statute in the Nursing Home Care Act addressing the right to commence an action and to have a jury trial would govern over the more general statute favoring arbitration. Here, we are presented with similar circumstances to those encountered in *Bruner*, this note, supra. The Oklahoma Legislature has enacted a specific statute addressing non-competition agreements. Title 15 O.S.2001 § 219A, see note 2, supra, addresses the question of the validity of the covenant at issue. Here, as in *Bruner*, this note, supra, the more specific statute, 15 O.S.2001 § 219A, see note 2, supra, addressing the validity of covenants not to compete, must govern over the more general statute favoring arbitration.

¶ 16 Nitro–Lift's attempts to distinguish the cases discussed above are unpersuasive. We hold that the existence of an arbitration agreement in an employment contract does not prohibit judicial review of the underlying agreement. Our determination is supported by our prior jurisprudential pronouncements in: *Wyatt–Doyle & Butler Engineers, Inc. v. City of Eufaula*, 2000 OK 74, 13 P.3d 474; *Cardiovascular Surgical Specialists, Corp. v. Mammana*, 2002 OK 27, 61 P.3d 210; *Thompson v. Bar–S Foods Co.*, 2007 OK 75, 174 P.3d 567; and *Bruner v. Timberlane Manor Ltd. Partnership*, 2006 OK 90, 155 P.3d 16.[22]

¶ 17 **b) As drafted, the covenants are void and unenforceable as against Oklahoma's public policy expressed through legislative mandate in 15 O.S. 2001 § 219A.**

¶ 18 Nitro–Lift argues that the covenants not to compete are reasonable and necessary to protect the confidential information and technical knowledge imparted to the employees during training. The employer asserts that the covenants should be enforced as a necessary step in protecting Nitro–Lift in the marketplace. The employees contend that they received no confidential information during their employment with Nitro–Lift and that the non-compete provisions of the employment contract are void[23] as a matter of law pursuant to 15 O.S.2001 § 217.[24] Based on the Legislature's more precise statement on the matter of the enforceable parameters of a contract between an employer and an employee containing a covenant not to complete in 15 O.S. Supp.2006 § 219A,[25] we agree.[26]

¶ 19 The primary goal of statutory interpretation is to ascertain and, if possible, give effect to the intention and purpose of the Legislature as expressed by the statutory language.[27] Intent is ascertained from the whole act in light of its general purpose and objective[28] considering relevant provisions together to give full force and effect to

22. See, also, *Oklahoma Oncology & Hematology v. U.S. Oncology, Inc.*, 2007 OK 12, ¶ 19, 160 P.3d 936 [The existence of valid, enforceable agreements to arbitrate is a question of law to be reviewed by this Court *de novo.*]; *Rogers v. Dell Computer Corp.*, 2005 OK 51, ¶ 14, 138 P.3d 826 [Acknowledging that, under the Federal Arbitration Act, when an arbitration provision affects interstate commerce, the question of the contract's validity as a whole must be submitted to the arbitrator. Nevertheless, even though we were prohibited by federal law from examining the validity of the contract as a whole, we were not constrained from treating the contract as valid and analyzing the arbitration provision.]; *Oliver v. Omnicare, Inc.*, 2004 OK CIV APP 93, ¶ 5, 103 P.3d 626 [The question of whether a covenant not to compete or non-competition provision is contrary to public policy is a question of law for the court.]; *Loewen Group Acquisition Corp. v. Matthews*, 2000 OK CIV APP 109, ¶ 13, 12 P.3d 977 [To the same effect.].

23. A void contract is one that is illegal or contrary to public policy. *Kincaid v. Black Angus Motel, Inc.*, 1999 OK 54, ¶ 7, 983 P.2d 1016; *Maryland Casualty Co. v. De Armon*, 1937 OK 45, ¶ 0, 179 Okla. 60, 64 P.2d 719. A contract made in violation of a statute is void. *Kincaid v. Black Angus Motel, Inc.*, this note, supra; *Missouri Fidelity & Casualty Co. v. Scott & Scott*, 1918 OK 658, ¶ 0, 72 Okla. 59, 178 P. 122.

24. Title 15 O.S.2001 § 217 providing:

"Every contract by which any one is restrained from exercising a lawful profession, trade or business of any kind, otherwise than as provided by Sections 218 and 219 of this title, or otherwise than as provided by Section 2 of this act, is to that extent void."

25. We take judicial notice of applicable statutory provisions pursuant to 12 O.S.2001 § 2201(A) providing:

"Judicial notice shall be taken by the court of the common law, constitutions and public statutes in force in every state, territory and jurisdiction of the United States."

See also, *Matter of McNeely*, 1987 OK 19, ¶ 1, 734 P.2d 1294.

26. In the employees' brief filed on October 28, 2011, they maintain the same position on 15 O.S. Supp.2006 § 219A, see note, as this Court takes today. In Nitro–Lift's brief of October 31st, it continued to assert that the statutory provision was not for this Court to consider, but rather only for the arbitrator's application.

27. *White v. Lim*, 2009 OK 79, ¶ 12, 224 P.3d 679; *Head v. McCracken*, 2004 OK 84, ¶ 13, 102 P.3d 670; *Balfour v. Nelson*, 1994 OK 149, ¶ 8, 890 P.2d 916, 39 A.L.R.5th 935.

28. *Keating v. Edmondson*, 2001 OK 110, ¶ 8, 37 P.3d 882; *McSorley v. Hertz Corp.*, 1994 OK 120, ¶ 6, 885 P.2d 1343; *Oglesby v. Liberty Mut. Ins. Co.*, 1992 OK 61, ¶ 8, 832 P.2d 834.

each.[29] The Court presumes that the Legislature expressed its intent and that it intended what it expressed.[30] Statutes are interpreted to attain that purpose and end[31] championing the broad public policy purposes underlying them.[32] Only where the legislative intent cannot be ascertained from the statutory language, *i.e.* in cases of ambiguity or conflict, are rules of statutory construction employed.[33] If the language is plain and clearly expresses the legislative will, further inquiry is unnecessary.[34]

¶ 20 Title 15 O.S.2001 § 219A is the Legislature's pronouncement on Oklahoma's public policy[35] regarding covenants not to compete. It provides that where an employee has executed a covenant not to compete with an employer, the employee **"shall be permitted to engage in the same business as that conducted by the former employer or in a similar business as that conducted by the former employer as long as the former employee does not directly solicit the sale of goods, services or a combination of goods and services from the established customers of the former employer."** The statute goes on to provide that any provision in a contract between an employer and an employee in conflict with the provisions of the section **"shall be void and unenforceable."**[36]

¶ 21 Subsection A utilizes the mandatory term, "shall,"[37] in association with the employee's right to engage in the same or similar business as that of the employer while subsection B provides that "any" provision in a contract between the employer and employee conflicting with those terms "shall be void and unenforceable." The term "any" is all-embracing and means nothing less than "every" and "all."[38] The plain, clear, unmistakable, unambiguous, and unequivocal language of 15 O.S.2001 § 219A prohibits employers from binding employees to agreements which bar their ability to find gainful employment in the same business or industry as that of the employer.[39] The only exception allowed by the statutory provision is that the employee may be barred from soliciting goods or services from the employer's **established customers.**

¶ 22 The covenants not to compete contain provisions, for the period of two years, pro-

---

**29.** *Haney v. State,* 1993 OK 41, ¶ 5, 850 P.2d 1087; *Public Serv. Co. of Oklahoma v. State ex rel. Corp. Comm'n,* 1992 OK 153, ¶ 8, 842 P.2d 750.

**30.** *Minie v. Hudson,* see note 37, supra; *Fuller v. Odom,* 1987 OK 64, ¶ 4, 741 P.2d 449; *Darnell v. Chrysler Corp.,* 1984 OK 57, ¶ 5, 687 P.2d 132.

**31.** *Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City,* 1995 OK 62, ¶ 5, 901 P.2d 800, cert. denied, 516 U.S. 1029, 116 S.Ct. 674, 133 L.Ed.2d 523 (1995); *Wilson v. State of Oklahoma ex rel. Oklahoma Tax Comm'n,* 1979 OK 62, ¶ 5, 594 P.2d 1210.

**32.** *Haggard v. Haggard,* 1998 OK 124, ¶ 1, 975 P.2d 439; *Price v. Southwestern Bell Tel. Co.,* 1991 OK 50, ¶ 7, 812 P.2d 1355.

**33.** *State ex rel. Dept. of Human Serv. v. Colclazier,* 1997 OK 134, ¶ 9, 950 P.2d 824; *Matter of Estate of Flowers,* 1993 OK 19, ¶ 11, 848 P.2d 1146.

**34.** *White v. Lim,* see note 27, supra; *Rout v. Crescent Public Works Auth.,* 1994 OK 85, ¶ 10, 878 P.2d 1045.

**35.** The Legislature defines Oklahoma's public policy through its statutory enactments. See,

*State ex rel. Henricksen v. State ex rel. Corp. Comm'n,* 2001 OK 89, ¶ 13, 37 P.3d 835; *Todd v. Frank's Tong Serv., Inc.,* 1989 OK 121, ¶ 12, 784 P.2d 47; *Mobbs v. City of Lehigh,* 1982 OK 149, ¶ 16, 655 P.2d 547, 31 A.L.R.4th 1.

**36.** Title 15 O.S.2001 § 219A, see note 2, supra.

**37.** Generally, the use of "shall" signifies a command. *City of Midwest City v. House of Realty, Inc.,* 2008 OK 28, fn. 5, 198 P.3d 886; *Zeier v. Zimmer, Inc.,* 2006 OK 98, ¶ 7, 152 P.3d 861; *Cox v. State ex rel. Oklahoma Dept. of Human Servs.,* 2004 OK 17, ¶ 21, 87 P.3d 607, cert. denied, —— U.S. ——, 129 S.Ct. 2434, 174 L.Ed.2d 228 (2009). Nevertheless, there may be times when the term is permissive in nature. *City of Midwest City v. House of Realty, Inc.,* this note, supra; *Minie v. Hudson,* 1997 OK 26, ¶ 7, 934 P.2d 1082; *Texaco, Inc. v. City of Oklahoma City,* 1980 OK 169, ¶ 9, 619 P.2d 869.

**38.** *JPMorgan Chase Bank v. Specialty Restaurants, Inc.,* 2010 OK 65, ¶ 16, 243 P.3d 8; *State ex rel. Porter v. Ferrell,* 1998 OK 41, ¶ 9, 959 P.2d 576.

**39.** *Scanline Medical, LLC v. Brooks,* see note 42, infra.

hibiting the employees from accepting employment with any oil or gas entity located in the United States which generates five percent (5%) of its gross revenues from nitrogen generation. The same clause prevents the employees from: "owning, managing, operating, joining, controlling or participating" in a similar business; being a director, officer, representative, partner, or consultant in any business engaging in nitrogen generation; loaning money to a like enterprise; or selling or leasing equipment to any person or business which has any significant portion of its business as nitrogen generation, whether or not the equipment is related to that particular portion of the business. The covenant conceivably could be interpreted to prevent the employees from taking jobs in any capacity from a competing business, even one not directly related to the nitrogen generation process. The agreement not only bars active solicitation of current customers or suppliers of Nitro–Lift, it also forbids the employees from approaching past customers and suppliers. Furthermore, it operates to inhibit the employees from employing or engaging any Nitro–Lift officer or employee even where those individuals might seek employment on their own initiative rather than from any intervention by the employees.

¶ 23 The non-competition contracts go well beyond the bounds of what is allowable under § 219A and violate the legislatively expressed public policy. Therefore, we hold that, pursuant to 15 O.S.2001 § 219A, the covenants not to compete are void and unenforceable as against Oklahoma's public policy expressed through legislative mandate.

¶ 24 **c) Judicial modification of the covenant not to compete is inappropriate where, as here, the contractual provisions would have to be substantially excised, leaving only a shell of the original agreement, and would require the addition of at least one material term.**

¶ 25 To bring the non-competition agreement within the bounds of what is allowable under 15 O.S.2001 § 219A, we would have to decimate its provisions. Essentially, subsections (k)(i) and (k)(iii) would have to be stricken in their entirety, leaving only subsection (k)(ii) relating to solicitation of past or present customers or suppliers of Nitro–Lift. However, that subsection also suffers shortcomings and infirmities.

¶ 26 Subsection (k)(ii) prohibits the employee from canvassing, soliciting, approaching or enticing away Nitro–Lift's **past** or present customers or suppliers. Section 219A allows an employer to prohibit solicitation by an employee of "established customers," but it says nothing about barring purchases from an employer's suppliers. Undoubtedly, the Legislature, in utilizing the term "established customer," had in mind those businesses and customers wherein a relationship was ongoing and anticipated to continue into the future.[40] However, the non-competition agreement does not define what is a "**present** customer"[41] which might stretch to encompass temporary or single-event relationships.

¶ 27 The covenant not to compete contains a severability provision. Judicial modification is justified if the contractual defect can be cured by imposition of reasonable limitations concerning the activities embraced, time, or geographical limitations. Nevertheless, "there is more amiss here than can be reformed effectively."[42] Two of the three

---

**40.** Characterizing an established customer as one which the purchasers of a business would anticipate would continue to patronize the enterprise. See, *Bessemer Trust Co. v. Branin,* 618 F.3d 76 (2nd Cir.2010); *Rice v. Hulsey,* 829 N.E.2d 87 (Ind.App.2005); *Delta Resources, Inc. v. Harkin,* 118 A.D.2d 133, 506 N.Y.S.2d 695 (1986).

**41.** In *Key Temporary Personnel, Inc. v. Cox,* 1994 OK CIV APP 123, 884 P.2d 1213, the Court of Civil Appeals determined that the modification

of a contract to limit "clients" to "clients who remain Key clients" was not a substantial modification of the non-competition agreement. Nevertheless, in doing so, it differentiated the agreement under consideration from one in which other major modifications might be required.

**42.** *Bayly, Martin & Fay, Inc. v. Pickard,* 1989 OK 122, ¶ 14, 780 P.2d 1168; *Scanline Medical, LLC v. Brooks,* 2011 OK CIV APP 88, ¶ 32, 259 P.3d 911.

provisions of the contract would require delineation in their entirety. To conform with the restrictions of 15 O.S.2001 § 219A, we would have to determine whether the phrase "present customers" within the agreement conformed to the Legislature's term "established customer," thereby supplying a material term of the contract. We would also be required to excise the portion of this subsection (k)(ii) relating to past customers and suppliers.

¶ 28 We will not reform a covenant not to compete so offensive that it would require us to supply material terms.[43] We hold that the breadth of the delineation required to bring the non-competition agreements into conformance[44] and the necessity of adding at least one material term to the contract prevents judicial modification.

## CONCLUSION

¶ 29 Through the enactment of 15 O.S.2001 § 219A, the Legislature has expressed its intent with relation to the viability of covenants not to compete in the employment context. This Court does not extend its auspices, in determining the validity of a statute, to consider its propriety, desirability, wisdom or practicability. These matters are left to the legislative department.[45] To do so here would be especially egregious. The Legislature used mandatory directives in 15 O.S. 2001 § 219A regarding the boundaries of any non-competition agreement extracted as a condition of employment. In doing so, it utilized plain, clear, unmistakable, unambiguous, and unequivocal language leaving no room for judicial interpretation.

¶ 30 In conformance with our prior jurisprudence, we hold that the existence of an arbitration agreement in an employment contract does not prohibit judicial review of the underlying agreement. As drafted, we determine that the non-competition covenants are void and unenforceable as against Oklahoma's public policy as expressed by the Legislature's enactment of 15 O.S.2001 § 219A. Finally, because judicial modification cannot be accomplished without rewriting the agreement to cure multiple defects, leaving only a shell of the original agreement, and would require the addition of at least one material term, it is inappropriate.

¶ 31 Discretion is abused, so as to warrant reversal, when a trial judge makes a clearly erroneous conclusion and judgment, against reason and the evidence.[46] On this record, we are constrained to hold that the lifting of the temporary injunction and the failure to grant the employees permanent relief was without a basis in law, reason, or evidence and an abuse of discretion. The cause is reversed and remanded for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

ALL JUSTICES CONCUR.

---

**43.** *Bayly, Martin & Fay, Inc. v. Pickard,* see note 42, supra. See also, J. Boatman, "Contract Law: As Clear as Mud: The Demise of the Covenant not to Compete in Oklahoma," 2002 Okla.L.Rev. 491 (2002).

**44.** This is not a situation where all the ills of the covenant not to compete may be cured by striking offending sections. See, *Cardiovascular Surgical Specialists Corp. v. Mammana,* 2002 OK 27, 61 P.3d 210.

**45.** *Keating v. Edmondson,* see note 28, infra. See also, *State ex rel. Cartwright v. Dunbar,* 1980 OK 15, ¶ 8, 618 P.2d 900; *Tate v. Logan,* 1961 OK 136, ¶ 0, 362 P.2d 670.

**46.** *Spencer v. Oklahoma Gas & Elec. Co.,* see note 13, supra; *Tibbetts v. Sight 'n Sound Appliance Ctrs.,* 2003 OK 72, ¶ 3, 77 P.3d 1042; *Finnell v. Seismic,* 2003 OK 35, ¶ 8, 67 P.3d 339; *Green Bay Packaging, Inc. v. Preferred Packaging, Inc.,* 1996 OK 121, ¶ 32, 932 P.2d 1091.